Bronson, J.
By the Court, The people of this state in 1821, made the following fundamental law : “ No lottery shall hereafter be authorized in this state ; and the legislature shall pass laws to prevent the sale of all lottery tickets within this state, except in lotteries already provided for by law.” Const, art. 7, § 11. Several lotteries were then in progress, which had been previously authorized by the legislature of this state. Soon after the constitution was adopted, laws were passed in pursuance of its injunction, which were revised in 1880, before the drawing of all the lotteries had been completed. 1 R. S. 664, art. 4. By the twenty-sixth section of this statute, it was enacted, that “ every lottery, other than such as have been authorized by law, shall be deemed unlawful, and a common and public nuisance.” The twenty-seventh section provided, that “ no person, unauthorized by special laws for that purpose,” should open or set on foot any lottery. The, twenty-eighth section forbids any person to “ publish an account of any such illegal lottery.” And the twenty-ninth section provides, that “ no person within this state, shall vend, sell, or barter, furnish, supply, procure, or cause to be furnished, or procured, to or for any person or persons, any ticket — of any such lottery, device or game of chance, not ex *419 pressly authorized by law.” Whoever should offend against either of those provisions, was declared guilty of a misdemeanor.
The words italicized in these sections, evidently relato to the same thing as the exception in the constitution ; and they saved from the operation of the statute those lotteries, and those only, which had been author* [ *420 ] ized *by the legislature of this state prior to the adoption of the constitution. .
In April, 1833, it was enacted as follows : “ The lotteries authorized by law to be drawn within this state, may be continued until the close of the present year; after the end of which period, it shall not be lawful to continue or draw any lottery within this state; but all and every lottery heretofore granted or authorized within this state, shall absolutely cease and determine.” Statutes of 1833, p. 484, § 1. After the ending of the year 1833, all lotteries, without limitation or qualification,'became and were, “unlawful, and a common and public nuisance.” The qualification in the several sections of the act of 1830, in relation to lotteries then authorized by law, was, in effect, repealed ; and it was thereafter unlawful, and a misdemeanor, to sell a ticket in any lottery whatever. The defendant was indicted for selling a ticket in 1839 — more than five years after the traffic had been wholly prohibited ; and I cannot entertain a doubt, that he is liable to the penalty prescribed by the statute.
The fact found by the jury, that the ticket which the defendant sold, was in a lottery “ duly authorized by the laws of the state of Delaware,” cannot aid him. That state has no extra territorial jurisdiction. Its laws are of no binding force in any other state. There would be just as much ground for saying, that our statute declaring all lotteries unlawful, is of force in Delaware, as there is in saying that the statute of fhat state declaring lotteries lawful, is operative in this state. The finding of the jury on this point, is of no more importance than it would have been, had they found that the lottery was authorized by the laws of Great Britain or any other foreign government. It only proves that the lottery was lawful in another state or sovereignty ; not that it is lawful here.
I cannot yield to the argument that the qualifying words in the act of 1830, in relation to lotteries authorized by law, included any other lotteries than such as had been authorized by the legislature of this state. If the words are to receive a larger construction, I do not sec where we [ *421 ] can *stop. They will include the authorized lotteries of every state and sovereignty on earth. Such a construction would fall short of a repeal of the statute, and the argument in favor of it, rests, I think, on no solid foundation. When the legislature speaks, in general terms, of the laws, or things authorized by law, the expression must be understood as having exclusive reference to the laws of this state. We have nothing to do with the laws of other governments and it cannot be supposed *421 that the legislature intended to make any provision in relation to them, when such a purpose is neither indicated by the subject in hand, nor by the form of expression. To hold that the word law or latos, as used in our statute book, includes any other laws than such as are of force in this state, would lead to endless confusion.
It is true, that the 34th and 35th sections speak of the “ laws of this state ;” but this qualification cannot, I think, affect the construction of the previous sections. Several statutes, passed in different years, were, in 1830, brought together and embodied in" one act ; and the language of the different sections relating to unauthorized lotteries, is found not to be'entirely uniform ; but I think the same thing-was intended throughout. The argument built upon this difference in the form of expression, would prove too much when applied to other portions of the same statute. For example : the 29th section provides, that “ no person within this state” shall sell any ticket. The 27th, 39th and 51st sections contain asimilar qualification. But the 22d, 23d, 28th, 30th, 34th, 35th and 36th sections provide, that “ no person,” without any such qualification, shall do certain acts. If this change of phraseology proves any thing, then the last mentioned sections forbid the doing of certain acts in other states and countries, as well as in this, when it cannot for a moment be supposed that any such thing was intended by the legislature. This illustration goes to prove what I should have deemed sufficiently obvious, had it not been questioned, that the legislature when speaking of laws, persons, things or acts, must always be understood, unless something plainly appears to the contrary, as intending the laws •of this state, and persons and things, and acts to be done within [ *422 ] it. The jury have found that the defendant sold a ticket in 1839. That is enough to subject him to the penalty prescribed by the statute.
II. But it is said that the second count of the indictment is insufficient, because it is not alleged, in the language of the 29th section, that the ticket was in a lottery “ not expressly authorized by law.” If the defendant had been charged with selling a ticket prior to the year 1834,’ it would undoubtedly have been necessary to aver or show that the lottery was unauthorized, because some lotteries were then lawful, and were not included in the prohibition. But those lotteries ended with the year 1833, and since that period all lotteries whatever have been unauthorized and contrary to law. If the act of 1833 did not work a technical repeal of the qualifying words in the act of 1830, the two statutes taken together, contain an unqualified prohibition against the sale of any lottery tickets after the year 1833. The indictment charges, in legal language, that the defandant sold a ticket in the year 1839, and is, I think, clearly good.
The court of oyer and terminer should be advised to proceed and render judgment against the defendant, on the' verdict'.-
Ordered accordingly.