CHARLES impleaded with McINTYRE *vs.* THE PEOPLE.

Under the Revised Statutes (1 *R. S.* 665, § 28)· it is a misdemeanor to publish in this State an account of a lottery to be drawn in another State or Territory, although such lottery be authorized by the laws of the place where it is to be drawn.

Accordingly *held* that a demurrer to an indictment which charged the defendant with publishing, in the city of New York, an account of a lottery to be drawn in the District of Columbia, was not well taken.

Where the indictment charged the defendant with publishing an account of an illegal lottery, and set forth *in hac verba* the lottery scheme, which shewed that the prizes consisted of sums of money; held *good*, although it was not otherwise averred that the lottery was set on foot for the purpose of disposing of money, land, &c.

Charles and McIntyre were indicted at the New York General Sessions for publishing an account of an illegal lottery. The indictment charged that the defendants on, &c., at the fourth ward of that city, in a newspaper called the "Wall Street Reporter," published an account of a certain illegal lottery, stating when the same was to be drawn, and where tickets were to be had, together with the prizes therein. It then set forth the account so published, *in hac verba*, from which it appeared that the prizes were of various *sums of money*, and were to be decided by the numbers drawn from the wheel of the Alexandria Lottery, to be drawn at Alexandria, in the District of Columbia. The indictment did not shew, otherwise than by setting forth the published account, that the lottery was set on foot for any of the purposes forbidden by the statute. (1 *R. S.* 665, § 27.) The defendant Charles put in a demurrer, which was overruled by the Sessions, and judgment given for the people. The Supreme Court, upon writ of error, affirmed the judgment, and the defendant brings error to this Court.

*C. C. Egan*, for plaintiff in error. 1. The statute only prohibits the publication of a lottery scheme which is set on foot within this State, and therefore the facts charged in the

indictment constitute no offence.     2. The statute requires that the lottery shall be established for "the purpose of exposing, setting to sale, or disposing of houses, lands, money, or goods, or things in action," and the indictment is defective in not alleging that the lottery was set on foot for these purposes.

*John McKeon,* for the people.

WRIGHT, J.     By the 26th section of article four, title eight, and chapter twenty, of the first part of the Revised Statutes, every lottery, game or device of chance in the nature of a lottery, *other than such as have been authorized by law,* is declared to be "unlawful and a common and public nuisance." The 27th section of the same article, makes it a misdemeanor for any person, *unauthorized by special laws for that purpose,*" within this state, to open, set on foot, carry on, promote or draw, publicly or privately, any lottery, game or device of chance of any nature or kind, or by whatever name it may be called, for the purpose of exposing, setting to sale, or disposing of any houses, lands, tenements, or real estate, or any money, goods or things in action." The 28th section is as follows: "No person shall by printing, writing, or in any other way, publish an account of any *such illegal lottery* stating when or where the same is to be drawn, or the prizes therein, or any of them, or the price of a ticket or share therein, or where any ticket may be obtained therein, or in any way aiding or assisting in the same. Whoever offends against this provision shall be deemed guilty of a misdemeanor," &c.

In 1830, when the Revised Statutes went into operation, there were special laws in existence authorizing within the State, certain lotteries. This fact explains the reason for the exceptions in the 26th and 27th sections above cited. But in 1833, the legislature provided that after the close of that year, "it should not be lawful to continue or draw *any lottery* within this State, but all and every lottery before granted or

authorized should absolutely cease and determine." (*Laws of* 1833, *p*. 484.)    Therefore, since the end of the year 1833, all lotteries have been unauthorized and contrary to law, and the sections of the Revised Statutes referred to above should be read as though the words, "other than such as have been authorized by law," in the 26th section, and the words "unauthorized by special laws for that purpose," in the 27th section, were stricken therefrom.

It is insisted by the plaintiff in error :    First, That the facts charged in the indictment do not constitute an offence against the laws of this State, because the publication charged was of a foreign lottery, and the statute does not make such publication an offence.    Second, That the indictment is defective in not averring that the lottery was one "for the purpose of exposing, setting to sale, or disposing of" property or money according to the description contained in the 27th section. Both of these points will be met in a decision of the question, whether the words, "any such illegal lottery," in the 28th section, refer to and point out only the particular kind of lottery or lotteries described in the 27th section, or whether they properly refer both to the 26th and 27th sections which include all lotteries ; for if the "illegal lottery" spoken of in the 28th section be only that described in the 27th, and it is conceded that the publication was of a foreign lottery, there is no offence charged against the laws of this State, as the 27th section describes a lottery to be opened, set on foot, carried on, promoted or drawn, *within this State*, for specified purposes ; and had the publication been of a lottery of this State, the indictment would have been defective in not averring the purpose for which the lottery was set on foot, &c. So, also, by the 26th and 27th sections, all lotteries being "unlawful and common and public nuisances," as far as there may be attempts to carry them on in the State, if the term "such illegal lottery," is meant to embrace all lotteries, made so by both sections, then the facts charged in the indictment do constitute an offence against our laws, and no special averment of the purpose of the lottery is necessary, but the general

averment of publication would be sufficient; for the 28th section, under which the indictment is framed, then makes it a misdemeanor to publish an account of any lottery, game or device of chance in the nature of a lottery for any purpose whatever.

It is contended that the offence prescribed by the 28th section is only that described in the 27th, of "printing, writing or publishing an account" of a lottery set on foot, *within this State,* for the purpose of "exposing, setting to sale or disposing of" property or money. If this be so, though the giving notice of a lottery set on foot and to be drawn in the District of Columbia is within the mischief and against the policy indicated by the 27th section, yet not being an act *malum in se* nor in contravention of positive law, it is not criminally punishable. But I am of a different opinion. I think that the words, "such illegal lottery," relate not solely to the particular kind described in the 27th section, but to *all* lotteries; as all are by the 26th section declared to be "unlawful and common and public nuisances." Such is the relation given by the Supreme Court to similar words in the 29th section respecting the sale of tickets. (*People* vs. *Sturdevant,* 23 *Wend. R.* 418.) If the phrase, "*such illegal lottery,*" in the 28th section were necessarily qualified by the description in the 27th section, and by no reasonable construction of language could relate to the 26th, I should not feel justified in an attempt to give it such relation. Though the mischief be as great to publish an account of a foreign as of a domestic lottery, it is for the legislature to determine whether one or both acts shall be a misdemeanor; and it is not for courts by a strained construction of language, or by an adoption of a false relation of words to each other or to the preceding sentences, to create a criminal offence not obviously within the letter or meaning of the statute. But for ought that I can discover, the phrase "such illegal lottery," in the 28th section may as aptly relate to all lotteries, which by the 26th section are declared to be unlawful, as to the particular description of lottery which the 27th section makes specially an offence to open, set on foot, carry on, promote or draw; and if the impediment I have

suggested to such construction does not really exist, and the words may as well relate to the descriptions in the 26th section which embraces all lotteries, as to the 27th which includes only a particular kind, it would certainly be erroneous, in view of the fact that the mischief which the law intended to prevent is the same by the publication of an account of a foreign as of a domestic lottery, to narrow or limit the offence prescribed in the 28th section, to the publication of an account of a lottery set on foot, within this State, for specified purposes.

I think that by printing, writing, or in any other way to publish an account of *any lottery*, "stating when or where the same is to be drawn, or the prizes therein, or any of them, or the price of a ticket or shares therein, or where any ticket may be obtained therein, or in any way aiding or assisting in the same," is an offence under the 28th section of the statute, and that consequently a general averment in the indictment of publication is sufficient.

The judgment of the Supreme Court should therefore be affirmed.

BRONSON, J. The defendant insists that our lottery act does not forbid the publishing an account of any lottery, except such as are opened, set on foot, or drawn within this State. (1 *R. S.* 665, § 28.) He makes the word "such," in the 28th section, refer, among other things, to the words "within this State," in the 27th section. But the words "within this State," as there used, neither add nor take away any thing from the force of the section. Our Legislature has no extra-territorial jurisdiction; and when it forbids, in unqualified terms, the doing of an act, it must always be understood that the thing is only forbidden within this State. The Legislature has in this instance only expressed what is usually left to implication. The words "such illegal lottery," in the 28th section, refer to lotteries for disposing of money or property, which had not been authorized by the laws of this State; and all other gaming lotteries are illegal here, though they may have been authorized by the laws of other States.

This point was decided in *The People* vs. *Sturdevant*, (23 *Wend.* 418 ;) and I see no reason for questioning the authority of that case.   (*See also, Commonwealth* vs. *Dana*, 2 *Metc.* 329, 338.)

The indictment does not directly and expressly allege that the lottery, of which the defendants published an account, was opened or set on foot for the purpose of disposing of money or other property.   (*The People* vs. *Payne*, 3 *Denio* 88.)   But that fact appears from the advertisement itself, which is set out at large in the indictment: and according to the decision in *The People* vs. *Rynders*, (12 *Wend.* 425,) this is good pleading, even in a criminal case.   Although, as an original question, I should probably have come to a different conclusion, I am content to follow the authority of that case.

I am of opinion that the judgment of the Supreme Court should be affirmed.

Judgment affirmed.