## DETERMINED IN THE

# FIRST DEPARTMENT,

### AT

## GENERAL TERM,

### January, 1882.

---

JOSEPH HART AND ANOTHER, PLAINTIFFS IN ERROR, *v.* THE
PEOPLE OF THE STATE OF NEW YORK, DEFENDANT
IN ERROR.

*Advertisement of lotteries — the act prohibiting it is not unconstitutional — 1 R. S.,*
*665, sec. 28 — Constitution, art. 1, sec. 8.*

Section 28 of 1 Revised Statutes, 665, provides that "no person shall by printing,
writing, or in any other way, publish an account of any such illegal lottery,
game or device, stating when and where the same is to be drawn, or the prizes
therein, or any of them, or the price of a ticket or share therein, or where any
ticket may be obtained therein, or in any way aiding and assisting in the
same."

*Held,* that the words "an account" were modified and controlled in their signifi-
cation by the language which followed them; that the statute prevented the
publication of such accounts only as were intended to operate as advertisements
or notices of illegal lotteries, and to aid and assist them; that it did not prevent
the publication by any newspaper, as a matter of news, of any narrative or state-
ment showing the existence of an illegal lottery and where the same is carried
on, for the purpose of denouncing and exposing the same, though such narra-
tion or statement may contain any of the several particulars mentioned in the
statute, and that it does not therefore conflict with section 8 of article 1 of
the Constitution declaring that every citizen may freely speak, write and pub-
lish his sentiments on all subjects.

WRIT OF ERROR to the Court of General Sessions of the city and
county of New York, to review its judgment upon a demurrer to
an indictment.

*Wm. F. Howe* and *Louis F. Post*, for the plaintiffs in error.

*Daniel G. Rollins*, for the defendant in error.

DAVIS, P. J.:

The plaintiffs in error were indicted for printing and publishing in the newspaper called " Truth " an advertisement of a certain illegal lottery called " The Louisiana State Lottery," purporting to be set on foot and conducted by the Louisiana State Lottery Company, which advertisement sets forth when and where the lottery, or the prizes therein were to be drawn, the price of tickets, and where the tickets could be obtained in the city of New Orleans and also in the city of New York, and where information in reference to the lottery company would be given. The indictment was based upon the twenty-eighth section of the statute entitled " Of raffling and lotteries," which is as follows :

" SECTION 28. No person shall by printing, writing, or in any other way, publish an account of any such illegal lottery, game or device, stating when and where the same is to be drawn, or the prizes therein or any of them, or the price of a ticket or share therein, or where any ticket may be obtained therein, or in any way aiding and assisting in the same. Whoever offends against this provision shall be deemed guilty of a misdemeanor ; and on conviction, be subject to a fine not exceeding one hundred and fifty dollars, or to imprisonment not exceeding three calendar months." (1 R. S., 665, § 28.)

The indictment alleges the publishing of " an account," describing the same substantially in the language of the statute, and then sets forth the advertisement at length and in full, as the account so published. The plaintiffs in error demurred to the indictment, and the district attorney joined in demurrer. The court overruled the demurrer and rendered judgment against the plaintiffs in error, imposing on each of them a fine of fifty dollars.

The section of the statute under which the indictment was found in this case, and similar sections of the same statute, have on several occasions been before the courts for consideration upon similar indictments. In *The People* v. *Sturdevant* (23 Wend., 418) it was held that the several provisions of the statute apply to all lotteries,

whether set on foot in this or some other State or country, so far as relates to the selling of tickets or the publishing of an account of any lottery within this State. In *The People* v. *Charles* (3 Denio, 212) it was held that publishing in this State an account of a lottery to be drawn in another State or country is indictable under the statute, though the lottery be lawful in the place where it is drawn; and that if an advertisement so published be set forth *in hæc verba* in the indictment, and it shows that the lottery was made for the purpose of disposing of money or property, the indictment will be sufficient, though the object of the lottery is not otherwise averred. This judgment was affirmed by the Court of Appeals in respect to all of the questions considered by the court below. (*Charles* v. *People*, 1 N. Y., 180.) It must therefore be considered as settled by authority in this State that an indictment will lie for publishing and printing such an account as is prohibited by section 28 of the statute.

But the precise question now presented was not raised in the cases above cited. It is now insisted that section 28 of the statute against lotteries is unconstitutional because in conflict with and violative of the provisions of the Constitution designed to secure the liberty of the press.

The Constitution of this State, by section 8 of article 1, declares that "every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no law shall be passed to restrain or abridge the liberty of speech or of the press."

An ingenious argument is made by the learned counsel for the plaintiffs in error, based upon the meaning of the words "an account," contained in section 28. It is insisted that the effect of the section is to forbid the publication by any newspaper, as a matter of news, of any narrative or statement showing the existence of an illegal lottery, and where the same is carried on, for the purpose of denouncing and exposing the same, when such narrative or statement happens to contain any of the several particulars mentioned in the statute; and that, inasmuch as it embraces such a publication, the statute is void under the Constitution, because it operates to restrain or abridge the liberty of the press to publish as matter of news violations of law, or to expose or condemn them. But we

think that the statute is not aimed at publications of the character mentioned, and that they are not embraced within its penalties, unless resorted to for the purpose of accomplishing the acts forbidden by the statute.

The language of section 28 is: "No person shall, by printing, writing or in any other way, publish an account of any such illegal lottery, game or device, stating when and where the same is to be drawn, or the prizes therein or any of them, or the price of a ticket or share therein, or where any ticket may be obtained therein, or in any way aiding or assisting in the same."

The words "an account" are clearly modified and controlled in their signification by the language which follows them, and the manifest purpose of the statute is to prevent publications to aid and assist lotteries by publishing accounts to operate as advertisements or notices of illegal lotteries, and to point out in some form when the same are to be drawn, or the prizes therein, or the price of tickets or shares, or where tickets may be obtained, or in some other way to aid and assist them. The character of the prohibited account is thus distinctly defined, and is shown not to mean an editorial or other commentary upon the law or its violation, or one pointing out offenders and condemning their conduct, or a mere narrative of such violations as matter of news. Under this construction the supposed restriction of the liberty of the press does not exist. And although the word "account" might in one of its significations be held to include the just and wholesome criticisms of the press condemning and exposing violations of the law, yet when its true meaning is discovered by its immediate context, courts are not required to fasten upon the other sense as a reason for overthrowing a salutary statute. Lotteries are expressly forbidden by the provisions of the Constitution. By section 2, article 7 of the Constitution of 1821, it was declared that no lottery should thereafter be authorized in this State, and that the legislature shall pass laws to prevent the sale of all lottery tickets within this State, except in lotteries already provided for by law. In 1833 all lotteries were declared unlawful and made public nuisances (Laws of 1833, chap. 306, p. 484), and by section 10 of article 7 of the Constitution of 1846 it was provided that no lottery should thereafter be authorized or the sale of lottery tickets allowed in this State. The provisions of

the Constitution imposed upon the legislature the duty of providing for their enforcement, and laws intended for that purpose cannot properly be deemed unconstitutional if their scope and object be limited to the prevention of acts inhibited by the Constitution itself.

An act of the legislature to prevent the press from discussing the legality or propriety of lotteries, or from exposing their existence as violations of law, and calling the attention of the public authorities to them, or criticising the acts or neglect of public officials in regard to enforcing the laws against them, would be violations of the constitutional rights and liberties of the press. But it is a very different thing to prohibit the publication of accounts, or notices or advertisements which are designed to aid and assist in the promotion of lotteries, by informing persons desirous of engaging in such enterprises where such lotteries are to be drawn, what are the prizes therein, what are the prices of tickets or shares and where tickets may be obtained, or otherwise aiding and assisting the unlawful act of maintaining and carrying on such violations of the statute.

Since lotteries are regarded as public evils, in their nature so injurious as to require express constitutional prohibition, there can hardly seem to be a doubt that laws in aid and execution of the provisions of the Constitution cannot properly be pronounced by the courts repugnant thereto and therefore void.

We are of opinion, therefore, that the judgment of the court below in overruling the demurrer was right and should be affirmed.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed.