## STATE *v.* MOORE.

The publication of an account of a lottery lawfully established in another state, as well as of a lottery put up in this state, is an indictable offence.

INDICTMENT, for publishing in the Manchester *Union* an advertisement of the Louisiana Lottery Company. The Manchester *Union* is owned and published by the Union Publishing Company, a corporation organized under the laws of this state, with its principal place of business at Manchester. Its affairs are managed by a board of five directors, of which the defendant is one. He is also the managing editor of the paper.

The Louisiana Lottery Company was chartered in 1868, and, under the constitution and laws of that state, is in every respect a legal institution and lawfully conducted, so far as the business is carried on within the state of Louisiana.

The statute on which the indictment is based is as follows : " If any person shall sell, dispose of, or offer or keep for sale, any tickets or part thereof in any lottery or pretended lottery, or anything intended as a token or evidence that the purchaser will be entitled to any share or chance therein, or shall print or publish any account thereof, or of the place where or by whom any such ticket or part or share or chance may be obtained, he shall be fined not exceeding one hundred dollars." G. L., *c*. 272, *s*. 2.

*The Attorney-General* and *Wallace*, Solicitor, for the state.

*J. W. Fellows*, for the defendant.

CARPENTER, J.   By Gen. Laws, *c*. 272, *s*. 1, it is provided that " if any person shall make or put up any lottery or pretended lottery   *   *   *   he shall be fined," etc.; and by *s*. 2, that " if any person shall sell, dispose of, or offer or keep for sale, any ticket or part thereof in any lottery or pretended lottery,   *   *   *   or shall print or publish any account thereof, or of the place or person where or by whom any such ticket   *   *   *   may be obtained, he shall be fined," etc.

It is urged that the second section was not intended to prohibit the sale of tickets in a lottery lawfully established in another jurisdiction, or the publication of an account of such lottery, but that the provisions of this section relate solely to lotteries forbidden by the first section, namely, lotteries or pretended lotteries made or put up in this state ; and in support of the position it is argued that our present statutes on the subject are a revision and condensation of previous statutes, and should receive the same construction.

The earliest statute of the state prohibiting lotteries is the act of February 14, 1791, which contained the proviso " that nothing in this act shall be construed to extend to any lottery allowed or

that shall hereafter be allowed by act or law of the legislature of this state or of the United States or of either of them." The act of June 12, 1807, contained substantially the same proviso. It is perhaps not altogether clear whether lotteries lawfully established in other states of the United States, or those only so established by the general government of the United States, were excepted from the operation of these statutes. In the act of July 7, 1827, the proviso was omitted. That statute made it unlawful for any person, "not having been first authorized or empowered so to do by the legislature of this state," to make or put up any lottery, or to aid and assist in any lottery "not authorized by the legislature of this state," by printing or publishing an account thereof.. It has never been altered in any substantial respect. It appears in a condensed form in the Rev. Stats., *c.* 220, Gen. Stats., *c.* 254, and Gen. Laws, *c.* 272. In *State* v. *Follet*, 6 N. H. 53, decided long before the revision of the statutes in 1842, it received a construction which is decisive of this question. In that case an indictment which alleged the sale of a ticket "in a certain lottery not authorized by the legislature of this state" was held good. The court say, "If there were no tickets in any lottery which were not within the prohibition of the statute, the crime is here alleged with sufficient certainty. For in that case it is wholly immaterial what kind of a ticket was sold and to what lottery it belonged. When the sale of all tickets is prohibited, it must be mere surplusage to describe in the indictment either the ticket or the lottery. But if there were any tickets in any lottery which might be lawfully sold, the indictment is defective. In that case it ought to be alleged what the tickets were, or at least to what lottery they belonged, that it might be seen whether the sale was lawful or not. * * · We are not aware that there was at the time alleged in the indictment, or that there has been at any time since, any lottery authorized by the legislature of this state, and are of opinion that the indictment must be adjudged sufficient." A like effect has been given to similar statutes in other jurisdictions. *Commonwealth* v. *Clapp*, 5 Pick. 41; *Com.* v. *Hooper*, 5 Pick. 42; *Com.* v. *Dana*, 2 Met. 329; *Com.* v. *Johnson*, Thac. Cr. Cas. 284; *Com.* v. *Braynard*, *ib.* 146; *People* v. *Sturdevant*, 23 Wend. 418; *People* v. *Charles*, 3 Denio 212; *Charles* v. *People*, 1 N. Y. 180.

The indictment may be maintained against the defendant, although he was not the owner, but the managing editor only, of the newspaper. The offence charged is a misdemeanor, and all who aided or abetted or in any way participated in its commission are liable as principals. The fact that the defendant was the managing editor of the paper is immaterial, except as evidence upon the question whether he did or did not print or publish, or aid or abet the printing or publishing of, the article in question.

*Case discharged.*

STANLEY, J., did not sit: the others concurred.