(38 Misc. Rep. 67.)

### PEOPLE v. MARTIN et al.

(Court of General Sessions, New York County. May, 1902.)

1. PERJURY—OFFICER OF FOREIGN CORPORATION—FALSE CERTIFICATE. .

Pen. Code, § 96, declaring any person who swears that any certificate by him subscribed is true on any occasion in which an oath is required by law or may lawfully be administered, and who on such occasion knowingly states in his certificate any material fact to be true which he knows to be false, shall be guilty of perjury, does not apply to a false oath taken before a notary public in the state by an officer of a foreign corporation to a verified certificate as to the amount of the capital stock paid in in cash, required by laws of the foreign state, but not by the state of New York.

2. SAME.

To make a false oath perjury, within Pen. Code, § 96, it must have been taken in a judicial proceeding, or in one authorized by law, or on an occasion when, under the laws of New York, or by the authority of the laws, an oath was required or administered.

3. SAME.

A law of another state requiring verified certificates by officers of corporations of the state does not give a domestic notary public such authority to administer an oath to such officers that the falsity of the certificate will constitute perjury, where the laws of the state do not require such oath.

Robert S. Martin and Harry Velthusen were indicted for perjury. Demurrer to indictment allowed.

William Travers Jerome, Dist. Atty. (Thomas F. Byrne, Asst. Dist. Atty., of counsel), for the People.

De Lancey Nicoll (John D. Lindsay, Franklin Bien, and Edward P. Coyne, of counsel), for defendants.

GOFF, R. The indictment alleges (1) that the defendants were respectively president and secretary of the Delaware Surety Company, a corporation duly organized under the laws of the state of Delaware; (2) that the laws of that state required such officers to make a sworn certificate of the amount of the capital stock of the corporation which had been paid in in cash, and file it with the secretary of state; (3) that on the 15th day of May, 1901, in the county and state of New York, the defendants appeared before a notary public of that state and county, and severally swore to a certificate that $1,000,000 of the capital stock had been paid in in cash, and caused the certificate to be filed with the secretary of the state of Delaware, in pursuance of the laws of that state; and (4) that the defendants, in swearing to such certificate, committed perjury.

On the principle that a demurrer admits the facts that are well pleaded, it may be assumed: First, that the Delaware Surety Company was a foreign corporation; secondly, that the laws of the state of Delaware required the making and filing of such sworn certificate; thirdly, that the laws of the state of New York did not require the making and filing of such certificate; fourthly, that the oaths were taken in the state of New York before a duly qualified notary public; and, fifthly, that the oaths were false. These facts therefore present this question: Is a false oath taken before a notary public in this

state by an officer of a foreign corporation, to a certificate required by the laws of a foreign state, perjury under our laws?

In order to determine what is perjury under our laws, recourse must be had to the statute. Eliminating those provisions which are inapplicable to the question, it reads:

"A person who swears that * * * any certificate * * * by him subscribed, is true, * * * on any occasion in which an oath is required by law, * * * or may lawfully be administered, and who in such * * * occasion, willfully and knowingly * * * states in his * * * certificate, any material matter to be true which he knows to be false, is guilty of perjury." Pen. Code, § 96.

It is evident that the theory upon which the indictment was founded is that upon an occasion in which an oath was required by law, or on which an oath was lawfully administered, the defendants swore falsely. On either or on both of these propositions the indictment must rest, for it cannot find support in any of the other provisions of the statute. When the statute makes use of the words "required by law," does it mean the law of this state exclusively, or does it mean any law, inclusive of the laws of foreign states? And when it says "lawfully administered," does it mean in pursuance of or under the authority of the laws of this state exclusively, or of the laws of any foreign state? The determination of these questions necessarily depends upon a clear understanding of the state as an entity, the extent of its jurisdiction, and its relation to other states; and if, from a brief examination of elementary principles, correct premises be established, then the process of reasoning to a right conclusion will be facilitated. The state is a political society organized by the common consent of the inhabitants of a certain territory for purposes of mutual protection and defense, and exercising whatever powers are necessary to that end. Cooley, Const. Lim. 1. Its jurisdiction is coextensive with its territory, and in discharge of its legislative function it makes law which is operative only within its own boundaries. 2 Burl. Natural & Pol. Law, 32. A law is a rule of conduct prescribed by the lawmaking power in the state (1 Kent, Comm. 447), and the term "law" is confined to enactments of the legislature of the state. In re Burchard, 27 Hun, 436. When the legislature speaks in general terms of the laws, or of things authorized by law, the expression must be understood as having exclusive reference to the laws of this state. People v. Sturdevant, 23 Wend. 420. An attribute of a state is sovereignty. Its law, as a general rule, is supreme within its territory, but it has no extraterritorial force; nor has the law of a foreign state any force within its territory. Hall, Inst. Law (4th Ed.) § 10; Rose v. Himely, 4 Cranch, 241, 2 L. Ed. 608. This rule is subject to modification when applied to a state of the United States and the federal Union. There a dual system of sovereignty prevails, and the laws of a state are never considered foreign in the federal courts, and, vice versa, the federal laws are never considered foreign in the state courts. United States v. Turner, 11 How. 663, 13 L. Ed. 857. But in the relations between the different states they are, for general purposes, treated as foreign to each other, and the laws of one state are considered as foreign to another. Hanley v. Donoghue, 116 U. S. 1,

6 Sup. Ct. 242, 29 L. Ed. 535; Buckner v. Finley, 2 Pet. 586, 7 L. Ed. 528; Kentucky v. Dennison, 24 How. 66, 16 L. Ed. 717. "A law is foreign when it is enacted by a sovereignty politically distinct and territorially separate from that which gives force and sanction to the lex fori. It is therefore, ex vi termini, foreign, outside the territorial limits of the sovereignty which forms its source, and ceases to have any validity ex proprio vigore." 2 Story, Confl. Laws (8th Ed.) § 20. "It is a principle of universal application, recognized in all civilized states, that the statutes of one state have, ex proprio vigore, no force or effect in another." Marshall v. Sherman, 148 N. Y. 9, 42 N. E. 419, 34 L. R. A. 757, 51 Am. St. Rep. 654. It therefore may be accepted as fundamental that laws are territorial in their application, and have no extraterritorial force; that all persons are subject to the laws of the state in which they are; and, as a corollary, that no person is subject to the laws of a state in which he is not.

In the exercise of its powers the state prohibits the commission of certain acts within its boundaries, and, if committed, it declares them to be crimes. A crime is essentially local, and is the creature of the law which defines or prohibits it. It is an offense against the sovereignty, and can be taken notice of and punished only by the sovereignty offended. The indictment against the defendants is in the name of the people of the state of New York. They prosecute for a crime committed against their law, not for a crime committed against the law of a foreign state. Their law is entitled "The Penal Code of the State of New York" (Pen. Code, § 1), and an act or omission forbidden by that law is declared to be a crime (Id. § 3). Therefore, if a crime has been committed against the people of the state of New York, it must have been an act or omission forbidden by their law. That law (Id. § 96) declares that a false oath taken "on any occasion in which an oath is required by law, or may lawfully be administered, is perjury," and as a consequence an oath taken on an occasion in which it is not required by law, or where it is not lawfully administered, if false, is not perjury. Manifestly the meaning of the words "law" and "lawfully," as used in the statute, is the hinge upon which the question turns, and, in ascertaining that meaning, both words may be considered as one; for "lawfully" flows from, and means in pursuance of or according to law. It is, in my opinion, well established by principle and authority that where the term "law" is used in a penal statute it refers to the law of the state; and, applying this rule of construction to the statute (Id. § 96), it will read, "On any occasion in which an oath is required by the law of the state or may be administered in pursuance of or under the authority of the law of the state." A construction in conflict with this rule would be hostile to the theory of the foundation of the state, and destructive of its sovereignty.

The test, therefore, is, were the acts of the defendants in swearing falsely to the certificate acts forbidden by the law of this state? A false oath may not of itself be perjury. To make it perjury it must have been taken in a judicial or other proceeding authorized by law, or on an occasion when an oath was required by law, or

must have been administered in pursuance of or by authority of law. The oath upon which the perjury is predicated was not taken in a judicial or other proceeding authorized by law, nor on an occasion when an oath was required by, nor was it administered in pursuance of or under authority of, law. The oath to the certificate was not required by the law of the state of New York; therefore it was not required by law; and, since it was not required by law, and there was no authority of law for its administration,—it was not lawfully administered. That the law of the state of Delaware required such sworn certificate relating to the affairs of a corporation which was its own creation is of no concern to our state, and no obligation rests upon our state to enforce the law of a foreign state relating to the affairs of a foreign corporation.

Nor does the mere fact that the oath was administered by a duly authorized notary public of the state of New York give it validity. All oaths administered by a notary are not per se valid, any more than all false oaths are perjuries. For instance, an oath of title to property, of financial condition for the purpose of obtaining credit, of the value of merchandise, or of the qualities of animals,—these and many oaths in like matters may be administered by a notary, but that does not make them the subjects of perjury if false. A notary has not unlimited powers to administer oaths, and by the mere act of his officiating make that perjury which is not declared by law to be perjury. If such were the rule, every falsehood, even on the most trivial matters, if expressed in the form of an oath before a notary public, would be a perjury. State v. McCarthy, 41 Minn. 59, 42 N. W. 599. Two things must concur to validate an oath, before perjury can be assigned: The oath must be required or authorized by law, and the officer before whom it is taken must be duly qualified to administer it. If either essential be absent, there cannot be perjury. The courts of our state will not take judicial notice of the law of the state of Delaware, which provides that "a notary public shall have authority in any case in which an oath or affirmation is necessary or proper to administer such oath or affirmation." Hanley v. Donoghue, supra. But even if the laws of the state of Delaware conferred upon a notary of the state of New York power to administer oaths in matters concerning its polity or the affairs of its citizens, that would not alter his status under the law of New York, nor make a law for New York that had not been enacted by its own legislature. He would in such case derive his power from the state of Delaware, and in its exercise would, to all intents and purposes, be a notary public of the state of Delaware, precisely as if he were a commissioner appointed by and for that state. Section 85 of the executive law of this state (Laws 1892, c. 683) provides that:

"A notary public has authority, (1) Anywhere within the state * * * to exercise such powers and duties as * * * by the laws of any other government, state or country, may be performed by notaries. (2) In the county in and for which he shall have been appointed, to administer oaths and affirmations."

This law simply declares that a notary public may, within this state, do any of those things which are recognized as notarial acts by the law of nations and commercial usage,—such as the authentication of instruments to be used in evidence, or the acknowledgment of deeds of conveyance, or the protest of notes or bills of exchange. But while authority is conferred upon the notary by the law of this state to do certain acts, effect or credit are given to those acts by foreign states, and he, by virtue of his office in this state, is commissioned by them to perform such acts. But the fact that, as attributes of his office, he is enabled to protest notes or bills of exchange, or to take acknowledgments to deeds, or to administer oaths, does not mean that every oath he administers is required by law. An oath may be lawfully administered in the sense that it is not an unlawful act, or that it is in legal form, or administered under a general power, but it is not lawfully administered, within the meaning of the statute defining perjury, unless it be in pursuance of or required by law. In other words, a voluntary or gratuitous oath cannot be made the subject of perjury.

Because the law of this state requires a similar certificate from the officers of domestic corporations, it does not follow that it requires such certificate from the officers of a foreign corporation. For failure to make and file such certificate by the officers of a domestic corporation, certain penalties attach in this state, but for a like failure on the part of the officers of a foreign corporation this state does not impose penalties. The making and filing of a certificate is a duty enjoined by law, but the law of the state of New York does not require the officers of the Delaware Surety Company to make and file a certificate. Then how can the certificate which they made be one required by law? If the officers of the Delaware Surety Company failed to make a certificate, would they be liable to any penalties for failure to comply with the law of the state of New York? Manifestly not. Now, since the making of any certificate was not required by our law, how can they be held guilty of perjury for making a false one?

It is urged by the people that, New York being a great commercial center, a large number of foreign corporations are located or doing business there; that the laws of the foreign incorporating states require the officers of such corporations to make sworn reports or certificates of their financial condition; and that, if such can be falsely made with impunity, great fraud and injustice are likely to follow. Each state is the architect of its own structure of laws. In the granting of charters to corporations and in regulating their affairs it may be liberal or exacting, but, whatever its laws may be, their execution depends upon itself. No other state is obliged to execute them or to judicially notice them. If the officers of a foreign corporation, for convenience or profit, see fit to transact corporate business in this commercial center, and if in doing so they fail to comply with or violate the laws of the state that created the corporation and control its existence, it is the dignity of that state that is offended, and not the dignity of the state of New York. The responsibility rests with each state not only to maintain its dignity, but to protect its citizens

from fraud; and if it fails in this regard, by the enactment and enforcement of appropriate laws, it cannot look to another state to do so. Recognition of, and ample provision for, the contingency suggested, is made by the state of New York when it. ordains, by subdivision 5 of section 16 of the Penal Code, "that a person is liable to punishment within the state * * * who, being out of this state and with intent to cause within it a result contrary to the laws of this state, does an act which, in its natural and usual course, results in an act or effect contrary to its laws"; and further, by section 676, Id., that "a person who commits an act without this state which affects persons or property within this state, or the public health, morals or decency of this state, and which, if committed within this state, would be a crime, is punishable as if the act were committed within this state." When the law of the state of Delaware required the defendants, as officers of a corporation which it had created, to make sworn certificate as to the payment of its capital stock, it must be presumed that it intended such certificate to be truthful. If the one that has been made is false, then the law of the state of Delaware has been violated, and it is none the less a violation that the certificate was sworn to beyond its boundaries. The remedy or punishment, if any, rests exclusively with the state of Delaware. Even if it be conceded that the city of New York, because of its commercial importance, is a financial clearing house for the whole country, it does not follow that the state of New York is a legal clearing house for the enforcement of the laws of all the states and territories of the Union.

To sustain their contention, the people cite as authorities the following cases: In Stewart v. State, 22 Ohio St. 477, it was held that indictment would lie for a subornation of perjury committed before a commissioner appointed to take testimony in Ohio for use in an action pending in Indiana. The report of the case does not disclose whether or not the taking of the testimony by the commissioner was in pursuance of the law of Ohio, but, at all events, the question determined was the correctness of the charge of the trial judge that the court of Indiana had acquired jurisdiction of the action, irrespective of preliminary proof of the residence of the parties, and therefore the oath was not extrajudicial. State v. Whittemore, 50 N. H. 245,. 9 Am. Rep. 196, sustained a conviction for perjury committed in a state court in a proceeding for naturalization under the laws of the United States. The laws of the United States authorized the state courts to naturalize citizens, and, while the state court was not bound to do so, yet it voluntarily assumed the function, and held false swearing in such a proceeding to be perjury. From the language of the decision it is difficult to determine the exact ground upon which it rests, except it be the broad ground of expediency, which may be found in this expression of the court: "False swearing in a state court, if allowed to go unpunished, has a tendency to impair the general usefulness of the tribunal and the dignity of the state." A similar question arose in the case of People v. Sweetman, 3 Parker, Cr. R. 358, where it was squarely held that in a proceeding for naturalization under the laws of the United States, conducted in a state court

by the authority of the United States, false swearing was not perjury against the laws of the state. These two cases are in direct conflict, and, in so far as either may be applicable by parity of reasoning to the case at bar, the New York case must control. In People v. Flanders, 18 Johns. 164, the defendant was convicted of forgery of a deed in this state of lands situate in Missouri, and the question was whether a crime was committed by forgery in this state of a deed of conveyance of lands without the state. The opinion of the court, by Spencer, C. J., is conclusive against the case being an authority for the people, where he says, "How, then, can it be material where the lands lie, if the act of forgery and the existence of the fraudulent intention both concur and happen within the state?" It is plain that the act of forgery was in violation of the law of this state, which declared that a false writing with intent to defraud was a crime. The distinction between the principle of this case and the contention of the people is easily perceived when it is remembered that a false writing with intent to defraud is ipso facto a crime, whereas false swearing is not a crime unless it be expressly made so by law. In People v. De Argencour, 95 N. Y. 629, the defendant was indicted for forgery of an engraved plate or note which purported to be issued by a bank in Havana, Cuba. The prosecution was not for the violation of the laws of Spain, but for the violation of the laws of our state, which declare it forgery to engrave a plate in form or similitude of a note issued by a bank under the laws of any foreign government or country. Pen. Code, § 511. In Chapman v. Gillet, 2 Conn. 40, the perjury was predicated on an oath administered by a justice of the peace in an inquiry by a church association into the conduct of its members. The court held that the oath was lawfully administered, saying, "None will say that it is unlawful or improper to administer an oath before an ecclesiastical tribunal." It is not necessary to express dissent from, or adhesion to, the doctrine of this case. It is sufficient to point out the fact that as an authority it is against the people, for it recognizes the church association as an ecclesiastical court, with power to administer oaths, and therefore the oath was taken in a judicial proceeding. 1 Hawk. P. C. 430. In Reg. v. Proud, 10 Cox, Cr. Cas. 455, an apprentice was indicted for perjury in giving false testimony in a proceeding against his former master for neglecting to pay his wages. It was objected that, since there was no provision of law authorizing the administration of an oath to an apprentice after the expiration of his term, the oath was not "lawfully administered," and consequently perjury could not be assigned. The court of criminal appeal overruled the objection, and held that the oath was "lawfully administered," inasmuch as the magistrate had general jurisdiction over the matter of the complaint. In Com. v. Smith, 11 Allen, 243, a commissioner was appointed by the state of New York to take testimony in the state of Massachusetts to be used in a case pending in the courts of New York. The defendant was convicted of subornation of perjury in a deposition before such commissioner. It was urged on appeal that perjury could not be committed before the commissioner, for the reason that the proceeding was in the courts of New York; that his authority to administer

oaths was derived from that state, and not from the state of Massachusetts, and consequently he had no power to administer oaths under the laws of the latter state. The conviction was upheld on the ground that the law of Massachusetts provided for the taking of depositions to be used in a cause pending in another state before a commissioner appointed under the authority of the state in which the suit was pending. The commissioner, while acting for New York, had authority under the law of Massachusetts to administer the oath, and it was therefore administered pursuant to the law of Massachusetts (Gen. St. c. 131, § 38). In none of these cases is there an adjudication upon the point under discussion, nor in principle is the reasoning of the people sustained.

In People v. Sturdevant, supra, approved in Charles v. People, 1 N. Y. 180, the defendant sold tickets in a lottery authorized by the law of Delaware. He was indicted for violating the law of this state, which prohibited all lotteries except those "authorized by law." He contended that the lottery of the state of Delaware was "authorized by law." The court held that the words "authorized by law" meant the law of the state of New York, saying:

"We have nothing to do with the laws of other governments. * * * To hold that the word 'law' or 'laws,' as used in our statute book, includes any other laws than such as are in force in this state, would lead to endless confusion."

In Com. v. Dana, 2 Metc. (Mass.) 329, the defendant was indicted for having in his possession tickets in a lottery "not authorized by law." In defense he offered to prove that the lottery was authorized by the laws of Rhode Island. In approving the rejection of the offer the supreme court said:

"The question depends on the meaning of the words 'not authorized by law,' in respect to which we cannot entertain a doubt. By the word 'law,' as we think, the legislature intended to refer to the municipal law of this commonwealth. * * * The laws of Rhode Island or any other state have no force in this state."

In People v. Travis, 4 Parker, Cr. R. 213, the defendant was indicted for perjury assigned on a false oath to a protest taken before a notary public in a case of a marine loss; and it was held that there could be no perjury, since there was no law requiring the oath or authorizing the notary to administer it; that it was purely voluntary and extrajudicial.

In State v. McCarthy, supra, the defendant was indicted for perjury in having sworn falsely before a justice of the peace in an application for a loan; and it was held that perjury could not be assigned, since the oath was not required or authorized by some law. Discussing this case the people contend that when the court used the words "some law" it meant any law. But that is not sound, for the opinion discussed section 87 of the Penal Code of the state of Minnesota, and its conclusions were clearly drawn from its provisions, so that when it used the words "some law" it clearly meant some law of Minnesota. In State v. Pike, 15 N. H. 83, it was held that false swearing before a state court in bankruptcy proceedings under the federal statute could not be prosecuted as per-

jury in the state court. In State v. Adams, 4 Blackf. 146, it was held that the state courts had no jurisdiction of perjury committed in an affidavit made under an act of congress relative to the sale of public lands. The principle pervading all these cases is a jealous regard for the laws of the local sovereignty, and a refusal, in the absence of special provisions, to recognize as of any force the law of a foreign state or country.

On principle, supported by uniform authority in this state and by the preponderance of authority in other states, I am of opinion that the oath to the certificate, not being required by the law of the state of New York, was not an oath required by law in the sense and meaning of the statute; that, not being in pursuance of or authorized by the law of the state of New York, it was not lawfully administered, and consequently perjury could not be committed. The demurrer is allowed.

Demurrer allowed.