ELIHU H. GROVER, Respondent, *v.* JOHN A. MORRIS et al., Appellants.

73   473
130   698

Lotteries authorized by the laws of another State are unlawful here, and are illegal within the meaning of the provisions of the Revised Statutes (1 R. S., 667, § 32), authorizing the purchaser of a ticket in any "illegal lottery" to sue for and recover double the sum paid, with double costs.

Where sales of lottery tickets are made through an agent, who receives the purchase-money and accounts to his principal therefor, an action may be maintained against the latter under said provision.

It is not necessary, in such an action, for the plaintiff to show that the identical money paid by him was remitted to and received by the principal.

The right of the plaintiff to recover is not affected by the fact that the agent individually loaned him the money to make the purchase, he having repaid the loan.

As to whether an action may be brought against the agent, *quære.*

The one year's statute of limitations (Code, § 96) does not apply to such an action; it is not an action "for a penalty or forfeiture, given in whole or in part to any person who will prosecute for the same."

If the action is to be regarded as one for a penalty or forfeiture, it comes within the three years' limitation prescribed in cases "where the action is given to the party aggrieved." (Code, § 92.)

It is proper to unite in a single action claims to recover back moneys paid on several separate purchases, and the rule of recovery in such an action is double the aggregate sum paid for the tickets, with double costs.

*Fisher* v. *The N. Y. C. and H. R. R. R. Co.* (46 N. Y., 644), distinguished.

It is not discretionary with the court, in such an action, whether or not to award a recovery for double the sum paid.

It is not necessary for the plaintiff to produce on the trial the tickets purchased, or to account for their loss; the action is not founded upon any contract evidenced by the tickets, or right acquired thereunder.

Where, in such an action, it appeared that defendants had furnished lottery tickets to an agent for sale, and that the latter had sold to plaintiff, *held*, that the account kept by the agent, and testified by him to be correct, of his transactions with the plaintiff was properly received in evidence for the purpose of showing the dates and amounts of the transactions.

(Argued April 12, 1878; decided May 21, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*John Graham*, for appellants. Plaintiff was bound to produce on the trial the tickets purchased by him. (*Wylde* v. *No. R. R. Co. of N. J.*, 53 N. Y., 156; *Blade* v. *Noland,* 12 Wend., 173.) The statute giving the action created a penalty, and as it was not brought within one year of the commission of the alleged offense, it was barred. (Code, § 96; *Meech* v. *Stoner*, 19 N. Y., 26; *Fisher* v. *N. Y. C., etc., R. R. Co.*, 46 id., 645; *Corning* v. *McCullough*, 1 id., 47, 58; *Wiles* v. *Suydam*, 64 id., 173, 176, 177; *Mer. Bk.* v. *Bliss*, 35 id., 412; *Hintermister* v. *First Nat. Bk.*, 64 id., 212.) If plaintiff could recover at all, it would be only for a single penalty. (*Sturgis* v. *Spofford*, 45 N. Y., 446; *Fisher* v. *N. Y. C., etc., R. R. Co.*, 46 id., 644; *Suydam* v. *Smith*, 52 id., 383; *Stewart* v. *Met. Bd. of Health*, 33 How. Pr., 4; *Mack* v. *McCullock*, 2 id., 1127; *King* v. *Havens*, 25 Wend., 420; 4 id., 216; *Brown* v. *Bristol*, 1 Cow., 176; *Livingston* v. *Platner*, id., 175; *Newcomb* v. *Butterfield*, 8 J. R., 342.) Plaintiff, to recover, was bound to show that his identical money had been paid over to defendants. (*Rolfe* v. *Delmar*, 7 Robt., 80; *Negley* v. *Devlin*, 12 Abb. Pr. [N. S.], 210.)

Plaintiff could not recover double costs. (*Seymour* v. *Billings*, 12 Wend., 285; *Porter* v. *Willet*, 14 Abb. Pr., 319; *Stoddard* v. *Clark*, 9 Abb. Pr. [N. S.], 310; *Bartle* v. *Gilman*, 18 N. Y., 260.)

*George F. Danforth*, for respondent. Plaintiff was not limited to one year within which to bring his action. (1 R. S., 619, § 32; Code, § 96.) Plaintiff was entitled to recover double the sum paid for each ticket. (1 R. S., 619, § 32; *Fisher* v. *N. Y. C., etc.*, 46 N. Y., 644, 655; *Suydam* v. *Smith*, 52 id., 388; *Hinterminster* v. *First Nat. Bk.*, 64 id., 212.

ANDREWS, J. The plaintiff commenced this action March 12, 1867, to recover, under section thirty-two of the article of the Revised Statutes, entitled " of raffling and lotteries," double the sum of money paid by him on the purchase of lottery tickets from the defendants. This section is as follows : " Any person who shall purchase any share, interest, ticket, certificate of any share or interest, or part of a ticket, or any paper or instrument purporting to be a ticket, or share or interest in any ticket, or purporting to be a certificate of any share or interest in any ticket, or in any portion of any *illegal lottery*, · may sue for and recover double the sum of money, and double the value of any goods or things in action, which he may have paid or delivered in consideration of such purchase, with double costs of suit." (1 R. S., 667.)

The action was tried before a referee, who found that the appellants were owners and managers of several lotteries authorized by the State of Kentucky ; and that between the 1st day of June and the 15th day of November, 1864, they, through their agent at Rochester, sold to the plaintiff tickets in these lotteries to the amount of $6,148.36, for which the plaintiff paid to them that sum ; and he directed judgment for the plaintiff for double the sum so paid, with double costs of the action. The Constitution of 1821 (art. 6, § 11) prohibited thereafter the authorization of lotteries in this State, and required the

Legislature to pass laws to prevent the sale of lottery tickets, except in lotteries already provided for by law. The excep. tion was inserted for the protection of persons who held unexpired lottery grants, made by the Legislature prior to the adoption of the Constitution, some of which were still in force when the Revised Statutes were passed. These grants were finally surrendered by the holders in 1833, and by statute passed in that year it was declared that at the close of the year " all and every lottery heretofore granted or authorized within this State shall absolutely cease and deter- mine." (Laws of 1833, p. 484, § 1.)

The words "illegal lottery," in the thirty-second section of the statute, were used to confine the operation of the section to cases of the purchase of lottery tickets in lotteries not authorized by the laws of the State, and to exclude cases where money or property was paid or received on the pur- chase of tickets in lotteries authorized thereby. The inten- tion was to give the right to restitution in all cases where such remedy did not interfere with lottery grants or fran- chises, existing under the laws of this State. The twenty- sixth section declares that every lottery, other than such as has been authorized by law, shall be deemed unlaw- ful and a common or public nuisance. Lotteries author- ized by the laws of other States are unlawful here, and are illegal within the meaning of the thirty-second section. This is conclusively settled by the decisions construing other and cognate sections of the statute. (*The People* v. *Sturdevant*, 23 Wend., 418; *Charles* v. *The People*, 1 N. Y. Rep., 180.) The last was the case of an indict- ment for publishing an account of an "illegal lottery," contrary to the provisions of the twenty-eighth section ; and it was held that the offense was committed by the publica- tion here of a lottery authorized by the laws of another State. It was no defense, therefore, that the tickets purchased by the plaintiff were in lotteries authorized by the State of Kentucky.

The further point is taken that an action under the

statute can only be maintained against the actual seller and vendor of the tickets, and that where the sale is made through an agent, who receives the purchase money, the principal is not liable, although the agent accounted to him and he accepted and retained the fruits of the business. This point is not tenable. The section does not in terms declare against whom the action shall be brought. The twenty-ninth section prohibits the sale of lottery tickets, and makes such sale a misdemeanor, and the thirty-second section, which authorizes an action by the purchaser to recover double the sum paid, by necessary implication designates the seller as the person against whom the action is to be brought. The defendants were, according to common understanding and in a legal sense, sellers of the tickets. They sent tickets to their principal agent at Rochester, who with their knowledge and by their authority, as the testimony tends to show, distributed them to Thomas and others, sub-agents, who acted, in selling them, merely as their agents and instruments, and the money paid by the plaintiff to Thomas, through whom the sales were made, was accounted for to the defendants. It may very well be that the plaintiff could have brought his action under the statute against Thomas, regarding and treating him as the seller ; but the object of the section was to discourage the business of selling lottery tickets, and it would go very far to defeat its benificent purpose if it should be held that the owners and managers of lottery schemes could escape personal liability under this section, and deprive the purchaser of any substantial remedy by the easy device of appointing irresponsible agents to make the sales.

It was unnecessary for the plaintiff to show that the identical money paid by him was remitted to, and received by, the defendants. The principal agent at Rochester remitted the balance in his hands monthly to the defendants, and they were advised daily of the tickets sold. This action is not analogous to the actions of trover or replevin, and it was sufficient, to establish the right of action, that the defendants received the benefit of the money paid

by the plaintiff. Nor did the fact that the agent, Thomas, sometimes advanced money by way of loan to the plaintiff to pay for the tickets affect his right to recover. The loans were repaid by the plaintiff, and the referee finds that the credit extended by Thomas was a personal transaction between him and the plaintiff, to which the defendants were not parties.

The defendants in their answer, among other defenses, relied upon the limitation of one year contained in section 96 of the Code, which provides that " an action upon a statute for a penalty or forfeiture, given in whole or in part to any person who will prosecute for the same, must be commenced within one year after the commission of the offense," etc. The actions referred to in this section are those which are technically known as *qui tam* or *popular* actions, given by statute for the recovery, in whole or in part, of forfeitures or penalties to any person who may sue for the same. (3 Bl. Com., 160.) It is a conclusive answer to the defense based upon this section that the cause of action is not within its terms. The action is not for a penalty or forfeiture given by statute " to any person who will prosecute for the same," but for a sum of money which can be recovered by the purchaser of lottery tickets and by no one else. If the action is to be regarded as an action for a penalty or forfeiture, it comes within the limitation of three years prescribed in the ninety-second section, it being " an action upon a statute for a penalty or forfeiture where the action is given to the party aggrieved." The thirty-second section of the lottery statute, by allowing the purchaser of lottery tickets to recover back money paid therefor, treats him as the aggrieved party. But it is unnecessary to determine whether the action is strictly for a penalty or forfeiture so as to bring it within the ninety-second section. If not, then the six years limitation prescribed by the ninety-first section applies; but whether the action is governed by the ninety-first or ninety-second sections, it was not barred by the statute.

The referee in awarding judgment for double the sum

found by him to have been paid by the plaintiff for the purchase of tickets, followed the express language of the statute. The right of the plaintiff to unite in a single action — claims to recover back money paid on separate purchases of tickets — cannot be doubted ; and where several causes of action are united the rule of recovery is double the aggregate sum paid for the tickets, with double costs.

The case of *Fisher* v. *The N. Y. C. and H. R. R. R. Co.* (46 N. Y., 644), as was observed in *Suydam* v. *Smith* (52 id.; 388), was decided upon the peculiar language of the statute under which the action was brought, and which, as construed by the court, limited the recovery in any action to the excessive fare paid and fifty dollars in addition. The judgment in that case was sustained for the aggregate excess of illegal fare exacted by the defendant on the several occasions set forth in the complaint, and a single penalty. There is no room for doubt as to the meaning of the thirty-second section of the lottery act, and we cannot refuse to give effect to its plain language.

The claim of counsel that the words "may sue for and recover double the sum," makes it discretionary with the court to award a recovery of double the sum paid or not, cannot be sustained. If the discretion exists to limit the recovery to the actual amount paid, the discretion also exists to deny any recovery, as the words "may recover," apply to the whole cause of action. Double costs were also properly awarded.

The objection to the introduction of the account kept by Thomas, of his transactions with the plaintiff, was properly overruled. The fact that the defendants had furnished lottery tickets to Thomas for sale through their principal agent McKinney, and that he had sold lottery tickets to the plaintiff, had been proved without objection. The account contained the dates and amount of the several sales, and Thomas testified to its correctness. For the purpose of showing the dates and amounts of the transactions, the account was clearly competent. (1 Greenl. on Ev., § 115.)

It was unnecessary for the plaintiff to produce the tickets purchased, or to account for their loss. The action was not founded upon any contract evidenced by the tickets, or right acquired thereunder. The tickets, as we gather from the evidence, were tokens containing numbers and marks which to the uninitiated, would convey little if any meaning. They had accomplished their purpose when the drawing was past. There is no presumption that such instruments are retained, and it was, we think, competent to prove the purchase by the plaintiff of lottery tickets, without producing these tokens or accounting for their non-production. (*Chrysler* v. *Renois*, 43 N. Y., 209.)

We have considered all the questions presented by the counsel for the defendants, and are of opinion that none of them furnish any ground for the reversal of the judgment.

The judgment is therefore affirmed.

All concur, except Church, Ch. J., not voting.

Judgment affirmed.