Smith, P. J.
This action was brought under the statute, (1 R. S., p. 667, § 32,) to recover double the sums of money alleged to have been paid by the plaintiff to the defendant, for lottery tickets or policy numbers.
The statute provides that any person who shall purchase any share, interest, ticket, certificate of any share or interest, or part of a ticket, or any paper or instrument purporting to be a ticket or share or interest in any ticket, or purporting to be a certificate of any share or interest in any ticket, or in any portion of any illegal lottery, may sue for and recover double the sum of money, and double the value of any goods or tilings in action, which he may have paid or delivered in consideration of such purchase, with double costs of suit.
According to the findings of the referee, the defendant was engaged, at the city of Rochester, in selling lottery tickets and *268 policy tickets or policy numbers in certain Kentucky lotteries, the purchasing of-which was termed .“policy playing.” The. purchaser, it seems, in consideration of a sum of money paid by him, was permitted to select certain numbers, which, if drawn in the lottery designated; entitled him to a much larger sum. That species of gaming, or dealing in chances, has been held to be in the nature of a lottery, within the.prohibition of the statute. (Wilkinson v. Gill, 74 N. Y., 63; The People v. Noelke. 94 N. Y., 137.)
The evidence shows that in most of her transactions with the defendant, the plaintiff acted through her husband, who, it is claimed, had authority from her to invest her moneys for the purpose referred to. The appellant’s counsel contends that the plaintiff cannot recover for moneys paid by her agent, but can only recover for moneys paid by herself personally. We think the position is untenable. ■ The statute gives the -right of action to the purchaser of the ticket. The agent has no right of action, and unless his principal can sue, the vendor of the ticket-is not liable.
. The referee found that at various times from the 28th of March, 1881, to the'28th of March, 1884, the plaintiff purchased numerous policy tickets or policy numbers, of the defendant..or. his agents, and paid therefor the following sums: From March 1, 1881, to August 1, 1881, $50; from October 1, 1881, to May 1, 1882, $350; and from May 1, 1882, to October 1,1882, $100, making a total of $500, for double of which sum he held the. plaintiff was entitled to recover, with double costs of the action. .
The appellánt’s counsel contends that" there is no satisfactory evidence to support these findings as to the specific stuns mentioned therein. The only testimony on the subject is that of the plaintiff and her husband, George F. Almy. They were married in September, 1881. From October 1, 1881, to about May 1, 1882, George F. Almy was an agent of the defendant. The following is an extract from the testimony of the plaintiff herself as stated in the case: .
“ Q. State what you have paid personally from October. 1880, to August. 1881 ? • '
A. About $200 I have paid him.
Q. The next date is from October 1, 1881, to October 1, 1S82, at $1.50 per day; state how much of that you paid ? . .
A. I think I paid it all.
Q. Who did you pay the money to, to his agent ? .
A. To my husband, Mr. Almy,
Q. To any one- else ?
A. No, sir.
Q. How- much ?
A. $1.50 per day, sometimes $5; I averaged $1.60,
Q. Can you tell what you paid during that date, 1881 to 1882 ?
A. Between $1400 and $1500.
Q. Did you average $1,50 per day ?
*269 A. Yes, sir.
Q. State what you did pay ?
A. Sometimes I paid $5 a day, sometimes nothing.
Q. During that year ?
A. I paid $1000.
Q. That is as near as you can get at it ?
A. It may he a good deal more.
Q. State to your best recollection ?
A. It might not amount to that; I can safely say $600 or $100.”
The plaintiff also testified that from October 1,1880, to August 1, 1881, and from October 1, 1881, to October 1, 1882, she had no dealing with the defendant personally; her dealings were with his agent; that she kept no memorandum of the transactions, or any written account of the sums paid, but that she estimated them from recollection. She also testified that from October 1, 1881, to October 1, 1882, she had as much as |800, but in answer to particular inquiries she testified that she feould not tell how much it was ; that she said she had $300 because her husband was earning it; that she had, in that time, $50 of her own, and the balance was her husband’s earnings ; that she did not know how much her husband earned during that year; that she didn’t know how much it cost her husband and herself to live ; and that she did not remember how much of her husband’s earnings' she spent on an average, in playing policy, during that year. '
George F. Almy testified that about the first of May, 1881, and the first of August, 1881, he played policy for his wife, about $50, with Ira W. Andrews, her son by a former husband, who, as the witness testified, was also an agent of the defendant, and that it was taken by Ira to the defendant. Witness also testified as follows : .‘‘From October 1, 1881, to about May 1, 1882, I was agent for O. W. McKinney myself, and played at least $350. On some days it; would be more and some less ; from May 1,1882, to October 1, 1882,1 played about $75, might have been a little-with her son Ira; during the same time I played about $25 in McKinney’s own office; that is all the playing I can call to mind that I- have done for the plaintiff.” The following is a further extract from the testimony of this witness :
‘ Q- The first money you had from Mrs. Almy to play with was given you when ?
A. About the first of May, 1881.
Q. Do you know how much that was ?
A. I think it was five cents.
Q. In the month of May, 1881, did Mrs. Almy give you any money to play for her ?
A. Yes, sir.
Q. What was the amount ?
A. I can not tell you; in the neighborhood of $15 or $16 — little more.
Q. Why do you think it was in the neighborhood of that ?
JL Because she said all she had in the world was-$50. I know that in the months of May, June and July, all the playing that was done for her, I did for her.
*270 Q. Was this $50 expended during those months playing policy ?•
A. Tes, sir.
Q. Prom May 1, 1881, to 'Oetober 1, 1881, she played about $50 ?
A. From May 1, 1881, to October 1, 1881, she played about $50.
Q. Then she didn't play until October?
A. No, sir.
Q. What was the amount she played then ?
A. I don’t remember.
Q. How much did she play in that month?
A. I can’t tell you.
Q. Tou don’t remember how much she played in the month of October, 1881?
A. Between $60 and $‘70.
Q. How do you know it was that ?
A. From October 1,1881, until May 1, 18S2,1 cleared about $350, writing in the office.
Q. How does that enable.you ?
A. I gave her every=cent I made, and outside of our living expenses it was all played into policy.
Q. What did it cost you to live on the average per day?
A. Not over $2.50 per week, outside of the rent, that was $5 per month.
Q. Tou had no other source of income than writing up the books-for Mr. McKinney ?
A. I had not.
Q. The money that was played was your money?
A. Tes, sir.
Q. It was money that you had earned ?
A. Tes, sir.
Q. And you played it?
A. Not until it had been handed to my wife.
Q. What was the process ?
A. Whenever I gave her money, if she wanted to play, she sometimes gave me the money to make her plays.”
The foregoing extracts show the nature of the testimony on which the findings are based. With some slight exceptions, there is not to be found in the entire case, any proof of the payment of the specific sum on any particular occasion. The testimony consists of estimates based upon averages, the data for which are loose and unsatisfactory. We do not suppose that in order to recover under the statute, the precise sum and the exact date of each payment must be proved; it may be enough to show the aggregate amount paid during a certain specified period, but such amount should be proved by satisfactory evidence with reasonable certainty. Perhaps there- is enough in the present ease to sustain the findings as to the sums of fifty and one hundred dollars, although, as to them, it is apparent that the testimony of the witnesses is to some extent an estimate. But it is difficult to find any valid support for the finding as to the $350. The statement of Mrs. Almy, that from October 1st, 1881, to 1882, her payments averaged $1.50 a day, is, apparently, hardly more than a guess. Sometimes, she says, she paid $5 a day; sometimes, nothing. On how many days she paid nothing, or on how many she made payments of any amount, she does not state, she kept no accounts. She undertakes to state the aggregate paid by her, during that year, putting it first, at between $1,400 and $1,500, next at $1,000, lastly at $600 or $700. Finally, her testimony and that of her husband, lead to *271 the conclusion that she had no means to pay with during that period except $50, of her own money, and what remained of her husband’s earnings, after deducting their expenses of living. His earnings did not exceed $850, at the most, and as to the cost of living, the only evidence is amere estimate, which shows it to have been at the rate of $190, a year, at the least. The wife testified that she earned something during that period, by sewing, but it did not appear how much she earned, except that she stated it was less than $100. Again, when asked if she had as much as $300, from October 1st, 1881, to October-1st, 1882, she replied in the affirmative, but in the next breath said she could not tell how much it was, and gave as the reason why she said she had $300, that her husband was earning it. We think the finding as to the $350, cannot be upheld. There is no such satisfactory proof in support of it, as should be required under a statute which authorizes a recovery to double the amount paid.
We have examined the several exceptions in the ease, but find no difficulty in the way of affirming the judgment, other than the one above pointed out.
Our conclusion is that the judgment should be reversed and a new trial ordered before another referee, costs to abide the event, unless the plaintiff will stipulate to reduce the judgment to $300, in which case the judgment so reduced is affirmed without costs of this appeal to either party.
In case an order of reversal is entered, it should state that the judgment is reversed upon a question of fact.
Barker, Haight and Bradley, JJ., concur.
So ordered.