MARY E. GOODRICH, APPELLANT, v. BYRON D. HOUGHTON
AND CLAUDE S. HOUGHTON, RESPONDENTS.

*Agreement made in the State of New York contemplating the purchase in Louisiana of lottery tickets, the sale of which was legal in the latter State, is not enforceable in the State of New York.*

In an action for conversion it appeared that the plaintiff in the action entered into an agreement with the defendants therein, in the State of New York, by which the parties were each to advance a certain sum, which was to be expended in the purchase of lottery tickets in the Louisiana State lottery; that the tickets were purchased and a prize was drawn, the amount of which was forwarded by express and was taken by the defendants, who refused to deliver to the plaintiff the share thereof to which she was entitled under the original agreement.

*Held*, that in order to maintain an action for trover, without reference to the enforcement of contract obligations, the possession of the property must be actual, and not constructive merely.

That the parties to this action were engaged in an illegal transaction under the laws of the State of New York.

That no basis for a recovery by the plaintiff was shown, except as connected with or involved in this illegal transaction, which did not afford a cause of action therefor.

Where an agreement is unlawful in the State in which it is entered into, although lawful under the laws of the State in which the scheme contemplated thereby is to be carried into execution, the agreement cannot be enforced in the State in which it is made.

APPEAL by the plaintiff from a judgment entered, after a trial at the Oswego Circuit before the court and a jury, in the office of the clerk of the county of Oswego on the 18th day of January, 1889, in favor of the defendants, dismissing the complaint, with costs; and also from an order made by the justice presiding at said trial, and entered in the office of the clerk of Oswego county on January 14, 1889, directing a nonsuit and dismissal of the complaint, with costs.

In the complaint there were three counts. In the first it was alleged that on the 23d of March, 1887, at Oswego, the plaintiff was the owner and in constructive possession of a certain sum of money to the amount of $12,500, and that upon that day the defendant Byron D. Houghton, while holding such money temporarily for plaintiff, combined with the other defendant to cheat her, and refused to deliver the money to plaintiff, except the sum of $6,217.50, and thereafter both defendants converted the balance to their own use. In the second count it was alleged that, at the above date, the plaintiff was the owner and entitled to the possession of $12,500, then being in the custody of the United States Express Company at Oswego, and authorized the defendant Byron D. to obtain it and bring it to her; that said defendant did obtain it, but refused to deliver it to her, and, in conspiracy with the other defendant, and by fraud, induced the plaintiff to accept the sum of $6,217.50, and converted the balance to their own use. In the third count it was alleged that, at the same date, the plaintiff was the owner and entitled to the possession of $6,217.50, and on that day the defendants detained and converted the same to their own use.

In the answer there was, first, a general denial; then full payment and a release were set up. It was then alleged that, about March 1,

1887, the plaintiff and defendants, at Oswego, N. Y., entered into an agreement for the purchase of fifty dollars worth of lottery tickets in the Louisiana State lottery, the plaintiff advancing twelve dollars and fifty cents and purchasing a one fourth interest therein, the defendant Byron D. Houghton a one-half interest, and the other defendant a one-quarter; that the money, fifty dollars, was sent by Byron D. to New Orleans and the tickets were purchased, as agreed, and sent to him; that thereafter one of the tickets drew a prize of $25,000, and another, twenty dollars; that the tickets were purchased in the name of Byron D., and the prizes drawn were sent to him by express and delivered to him, and thereafter $6,217.50 was paid to plaintiff in full of her share, less expenses; that the agreement for the purchase was contrary to the laws of the State of New York and void.

*J. B. Higgins* and *W. A. Poucher*, for the appellant.

*F. E. Hamilton*, for the respondents.

MERWIN, J. :

The defendant Byron D. Houghton, on the 30th of March, 1887, received from the United States Express Company, at Oswego, the sum of $25,020, and paid expenses thereon to the amount of $150. This money was consigned to Houghton from New Orleans, La. The evidence on the part of the plaintiff showed that this money was sent as money drawn upon lottery tickets in the Louisiana State lottery, purchased about a month before by Byron D. in pursuance of an agreement between him and the plaintiff. The plaintiff, in substance, testifies that she and Byron D. agreed to purchase fifty dollars worth of such lottery tickets, plaintiff to advance twenty-five dollars and Byron D. the rest, and each share equally in the results; that she did advance her part, and Byron sent the whole to New Orleans and obtained the tickets, upon some of which the money was drawn that was sent to Byron.

The claim of the plaintiff is that, inasmuch as the tickets were purchased in New Orleans, the agreement between plaintiff and Byron was legal, and he can be compelled to account for the profits. It was not shown what the law of Louisiana was on the subject. (*Thatcher* v. *Morris*, 11 N. Y., 437.) Assume that the business was

legal there, does that make legal the agreement made here between plaintiff and Byron D. ?

By the Penal Code (§ 324) a lottery is declared to be unlawful and a public nuisance. This applies to lotteries drawn in another State, whether authorized by such State or not. (Penal Code, § 334; *People* v. *Noelke*, 94 N. Y., 137.) Any person who in any way furnishes to another a share or interest in a lottery, to be drawn within or without the State, is guilty of a misdemeanor. (Penal Code, § 326.) In *Grover* v. *Morris* (73 N. Y., 476) it is said that lotteries authorized by the laws of other States are unlawful here. The subject-matter, therefore, of the agreement between plaintiff and Byron D. Houghton was unlawful under our law. That being so, the agreement cannot here be enforced. It is, however, urged by the plaintiff that a case was made out for recovery without reference to the original agreement between the parties and by reason of what occurred after the drawing of the prizes.

The money was consigned to Byron D. Houghton. Presumptively it belonged to him. The burden was on the plaintiff to show her title. It was shown that the drawing was on the fifteenth of March, and that afterwards, and before the money was received, the plaintiff saw Houghton and he said to her "we had drawn $25,000;" that there was then talk between them as to how the money should be sent for, and that it was understood that it should be sent by express; that Houghton said "he would send the tickets back by express and the money was to come by express to us;" that afterwards he talked with plaintiff about the claim of the defendant Claude, and plaintiff then said to him, "Half is mine and half is yours," and he replied, "I know it;" and he afterwards told plaintiff, "When the money comes I will bring it here, we will count it and divide it." After the money came Houghton declined to pay plaintiff the half, but paid her a quarter. Afterwards, as the evidence tended to show, the defendants converted the balance to their own use.

In *Woodworth* v. *Bennett* (43 N. Y., 273) it was held that, when an illegal contract has been fully executed and money paid thereunder remains in the hands of a mere depositary, who holds it for the use of one of the parties to the contract, an action to recover

the money so held will be sustained, but when the recovery of the money requires the enforcement by the court of any of the unexecuted provisions of the illegal contract, no action can be maintained. In that case the money was in the hands of the plaintiff, who was one of the parties to the original contract, and the question was whether it could be allowed to the defendant as a counter-claim. The plaintiff, after receiving the money, had promised to pay the defendant and apply it on their deal. It was said by CHURCH, Ch. J.: "The express promise does not aid the defendant, because the promise was only to carry out the unexecuted provision of the contract of partnership to divide the money." In *Barton* v. *Port Jackson*, *etc.*, *Plank-road Company* (17 Barb., 397), it is said that every new agreement entered into for the purpose of carrying into effect any of the unexecuted provisions of a previous illegal contract is void. In *Colton* v. *Simmons* (6 N. Y. St. Rep., 608) it is said that the court will not lend its process or jurisdiction in aid of a controversy in which a party seeks to recover profits resulting from an illegal business, although that business carried on in this State relates to lotteries that are authorized by other States.

In *Merritt* v. *Millard* (4 Keyes, 208), cited by plaintiff, the money was in the hands of a third party for the use of the plaintiff. In *Planters' Bank* v. *Union Bank* (16 Wall., 483) the money had been received by the defendant and credited to the plaintiff, so that the plaintiff did not need the aid of the illegal transaction to establish its case. The same rule was applied in *Cook* v. *Sherman* (20 Fed. Rep., 167.)

In *Brooks* v. *Martin* (2 Wall., 70) it was held that after a partnership contract, confessedly against public policy, has been carried out and money contributed by one of the parties has passed into other forms, and the results of the contemplated operation completed, a partner in whose hands the profits are cannot refuse to account for and divide them on the ground of the illegal character of the original contract. In that case there were then in the hands of the defendant, lands, money, notes and mortgages, the results of the partnership business; the original capital for which the plaintiff had advanced, and the defendant had by fraudulent means obtained possession and control of all the funds. These cases, and many others somewhat similar that are cited, are not antagonistic to the rule laid down in the *Woodworth Case.*

The conversations between plaintiff and Byron D. Houghton after the drawing of the prizes, and before the receipt of the money, all had reference to the original bargain, and the promise was no stronger than it was in the *Woodworth Case.* It was to carry out the unexecuted provision of the venture. Under the rule in that case, it is difficult to see how the plaintiff can stand.

It is suggested that the plaintiff had a constructive possession of the money. The possession must be actual in order to maintain trover without going into the original contract. (*Clements* v. *Yturria,* 81 N. Y., 285.) In the *Brooks Case* there was an actual possession that had been overcome by fraud. Here nothing occurred after the money was received by which the plaintiff can show any title.

It must, I think, be held that the parties were engaged in an illegal business, and that no basis for a recovery was shown except as connected with or involving the illegal transaction.

The nonsuit was, therefore, properly granted, and the judgment should be affirmed, with costs.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed with costs.