OPINION OF THE COURT
John Cataldo, J.
The defendant, Anthony Kim, is charged with promoting gambling in the second degree (Penal Law § 225.05), possession of gambling records in the second degree (Penal Law § 225.15 [2]), and possession of a gambling device (Penal Law § 225.30 [2]). He now moves to dismiss the accusatory instrument for facial insufficiency and for other pretrial relief pursuant to GPL article 255.
FACIAL SUFFICIENCY
The factual portion of the accusatory instrument states, in pertinent part, that on a particular date, time and location:
"Deponent [Detective Brennan] states that * * * [he] did give to defendant a sum of US currency in exchange for a receipt for a Florida lotto ticket.
"Deponent further states that defendant had within his custody and control gambling records and a gambling device in that defendant was operating a lotto machine from which deponent did receive the abovementioned receipt and that said machine did contain numerous similar previously sold Florida lotto receipts.
"Deponent states, that based upon deponent’s training and experience, which includes training in the recognition of gambling records and the meaning of their contents, the aforementioned articles are alleged and believed to be gambling records, as specified above.
"Deponent states, that based upon deponent’s training and experience, which includes training in the recognition of gambling devices and the operation of such devices, the aforementioned articles are alleged and believed to be gambling devices, as specified above.”
*348 A valid and sufficient accusatory instrument is a nonwaivable, jurisdictional prerequisite to a criminal prosecution (see, People v Alejandro, 70 NY2d 133; People v Case, 42 NY2d 98). Every information must contain an accusatory part and a factual part (see, CPL 100.15 [1]). The allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, must "provide reasonable cause to believe that the defendant committed the offense[s] charged in the accusatory part of the information” (see, CPL 100.40 [1] [b]). "Non-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense[s] charged and the defendant’s commission thereof’ (see, CPL 100.40 [1] [c]).
The accusatory instrument at bar charges the defendant with three gambling-related offenses as a result of his alleged conduct in selling a receipt for a Florida lottery ticket. This case presents a novel issue as to whether such conduct, if assumed to be true, constitutes a crime in New York.
The defendant argues in his supporting papers to the instant motion, that his conduct does not amount to illegal gambling. He admits that in response to Officer Brennan placing an order for a Florida lottery ticket, he charged the officer $2: $1 for the cost of the ticket and a $1 service charge. He then gave the officer a receipt for his purchase, but did not give him the actual lottery ticket as he does not sell or redeem such tickets. He claims that his conduct is limited to the following tasks: (1) Taking the customer’s order for an out-of-State lottery ticket which lottery is lawful in the particular sister State; (2) Keypunching the order into his computer terminal which transmits the order to a host computer located outside of New York State; (3) Tendering a receipt to the customer as proof of that order; and (4) Having the customer sign a power-of-attorney giving an independent purchasing agent in the State of actual purchase the authority to buy the requested lottery ticket and to hold it in the State of purchase until further instructed by the customer.
The defendant further asserts that if there is a winning ticket, the agent tenders the ticket to the Lottery Commission in the sister State with instructions to send the prize directly to the customer or to hold the prize or ticket for the customer to pick up. The defendant claims that neither he, as the order taker, nor the purchasing agent himself has any stake, share or interest in any prize, award or consideration associated with any lottery ticket ordered through this service.
*349 The case of People v Rhee (Sup Ct, Mar. 27, 1992, index No. 91-1545-01) is the only New York case which decided a similar issue to the one at bar, i.e., whether a purchasing service for out-of-State lottery tickets violates New York antigambling statutes. The court therein, relying upon the New York Constitution and the Penal Law definition of a lottery, held that such a service is illegal. This court agrees for the following reasons.
All forms of gambling are illegal in New York except those expressly authorized by the New York Constitution (see, NY Const, art I, § 9 [1]). In 1966, following the lead of New Hampshire, which approved a lottery sweepstakes which was to become effective in 1965, New York became the second State in modern America to authorize a State lottery (see, 1981 Opns Atty Gen 68). The amendment was first approved by the Legislature in 1965 and was approved for the necessary second time in 1966 (ibid.). The amendment legalizing State-run lotteries specifically states that "no lottery or the sale of lottery tickets * * * or any other kind of gambling, except lotteries operated by the state and the sale of lottery tickets in connection therewith as may be authorized and prescribed by the legislature * * * shall hereafter be authorized or allowed within this state” (see, NY Const, art I, § 9 [1]). The State Constitution further provides that the Legislature shall pass appropriate laws to prevent offenses in violation of, inter alla, the State-run lottery exception (see, NY Const, art I, § 9 [1], [2]).
The first count of the accusatory instrument charges the defendant with promoting gambling in the second degree which prohibits a person from knowingly advancing or profiting from an unlawful gambling activity (see, Penal Law § 225.05). The term "gambling” is defined in Penal Law § 225.00 (2), as follows: "A person engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome.”
A lottery can constitute a form of illegal gambling. "Lottery”, as defined in Penal Law § 225.00 (10), "means an unlawful gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or *350 by some other media, one or more of which chances are to be designated the winning ones; and (b) the winning chances are to be determined by a drawing or by some other method based upon the element of chance; and (c) the holders of the winning chances are to receive something of value.”
The Penal Law defines the term "unlawful” as "not specifically authorized by law” (see, Penal Law § 225.00 [12]). There exists an inherent problem with the Penal Law definition of "unlawful.” Specifically, it is questionable whether the phrase "authorized by law” refers to New York law or the laws of other sister States. This anomaly was addressed by the District Court of New York in the case of Chun v State of New York (807 F Supp 288 [SD NY, Feb. 19, 1992, 91 Civ 7048]), wherein the defendant sought a preliminary injunction to enjoin the State of New York from prosecuting her for violating New York’s antigambling laws. The District Court abstained from exercising jurisdiction noting that the New York antigambling provisions do not address the legality of promoting an out-of-State lottery which is legal in its own jurisdiction. The court went on to opine: "The definition of 'unlawful’ in § 225.00 (12) — 'not specifically authorized by law,’ — could be interpreted to exclude gambling which is authorized by the law of the jurisdiction where it occurs, even though not authorized by New York law. Under such an interpretation, Plaintiff would not be promoting unlawful gambling because the lotteries that she promotes are lawful in the states where they are conducted.” (Supra, at 292.)
This court finds that the phrase "not specifically authorized by law” is to be interpreted as referring to the laws of New York State. In 1967, the term "unlawful” was added to the definition of "lottery” to describe the phrase a "gambling scheme” and was also added to the definition of the crime promoting gambling in the second degree to modify the phrase "gambling activity.” (L 1965, ch 1030, eff Sept. 1, 1967.) This amendment was for the purpose of clarifying these provisions without any substantive change (see, Fifth Interim Report of the State of NY, Temp Commn on Revision of Penal Law and Crim Code [1966]). Logic dictates that the addition of the word "unlawful” was for the purpose of incorporating the 1966 amendment to the New York Constitution regarding the State-run lottery exception to the otherwise unlawful gambling statutes.
As previously discussed, the policy of New York in regard to gambling is expressed in article I, § 9 of this State’s Constitu *351 tian which legalizes lotteries "operated by the state” (1984 Opns Atty Gen 11). The phrase "lotteries operated by the state” is not defined in the Constitution itself. What the phrase is intended to sanction can be gleaned from an analysis of the constitutional mandate and concomitant statutory provisions. The constitutional grant to the State to establish a lottery is to be narrowly construed and any interpretation thereon must give effect to the intent of the framers (id., at 18). The State set up the lottery as a means of raising revenues for education and it has become a fund raising device of real importance to the State (see, NY Const, art I, § 9; see also, 1981 Opns Atty Gen 68).
There exists some conceptual relationship between the statutory provisions outlawing gambling and the statutory provisions by which the State may conduct it (see, 1984 Opns Atty Gen 11). With this in mind, this court will briefly examine the pertinent portions of the Tax Law. The Legislature chosen in the same election in which the constitutional lottery amendment was approved, enacted the enabling statute; the relevant provisions are now found at section 1600 et seq. of the Tax Law also known as the New York State Lottery for Education Law (1981 Opns Atty Gen 68). Tax Law § 1601 provides that this article of the Tax Law is for the purpose of implementing the constitutional amendment and to carry out the mandate thereof by establishing a lottery to be operated by the State, the net proceeds of which are to be applied exclusively for aid for school children. It is beyond cavil that the purpose of enacting the narrow exception to the otherwise unlawful lotteries was for the purpose of providing the State of New York with another means for obtaining revenues. In fact, the Tax Law was twice amended, i.e., March of 1968 and April of 1970, to boost revenues from the State lottery (1981 Opns Atty Gen 68). If the Constitution’s State-operated lottery exception was interpreted to mean that all State-run lotteries, including those of foreign jurisdictions, were legal, it would contravene the purpose of the amendment; namely, to obtain additional revenues for the State of New York.
Additional support for this conclusion can be found in section 1617 of the Tax Law. That section, which was enacted in 1988, provides for the establishment of a multi-State lottery provided approval from the Governor is obtained. The purpose of the joint multi-State lotto game was to obtain additional revenue (see, Tax Law § 1617). New York was to derive 45% of the total amount for which lottery tickets have been sold *352 during the preceding month (see, Tax Law § 1617 [e] [2]). It is clear from this section that the Legislature was focusing upon gaining additional revenue for New York State and was not seeking to allow gambling in other State lotteries which would only help support programs of the sister State. The Legislature, in adopting this provision establishing a multi-State lotto game, was able to further the goal of the constitutional amendment, i.e., to obtain funds for this State. The defendant’s practice in acting as a ticket broker for out-of-State lotteries runs contrary to the legislative purpose in enacting the narrow exception for permitting lotteries in this State.
Further confirmation for finding that the selling of out-of-State lottery tickets is unlawful in New York can be found by examining the statutory history of the antigambling laws. The penal prohibition against lottery offenses appeared in article 130 (§§ 1370-1388) of the 1909 Penal Law, having been derived for the most part from title X, chapter VIII of the 1881 Penal Code (see, 1984 Opns Atty Gen 11). Penal Law § 225.05 which defines the crime of promoting gambling in the second degree is derived, in part, from section 1373 of the 1909 Penal Law which provided as follows: "A person who sells, gives, or in any way whatever furnishes or transfers, to or for another, a ticket, chance, share, or interest, or any paper, certificate, or instrument, purporting to be or to represent a ticket, chance, share, or interest, in or dependent upon the event of a lottery, to be drawn within or without this state, is guilty of a misdemeanor.” (Emphasis added.)
It is important to note that although the predecessor statute specifically provided that one could not, inter alla, sell lottery tickets, whether conducted in this State or another State, the Legislature omitted this language and replaced it with the general prohibition against participating in unlawful gambling schemes. The missing phrase can, however, be found in Penal Law § 225.40 which provides, ”[a]ny offense defined in this article which consists of the commission of acts relating to a lottery is no less criminal because the lottery itself is drawn or conducted without the state and is not violative of the laws of the jurisdiction in which it was so drawn or conducted.” Moreover, the courts, in interpreting the earlier statute, i.e., title X, chapter VIII of the 1881 Penal Code, have consistently held that dealing in lotteries authorized by the laws of other States are unlawful in New York (see, Grover v Morris, 73 NY 473; People v Wolff, 14 App Div 73, affd 152 NY 640; Goodrich v Houghton, 55 Hun 526, affd 134 NY 115).
*353 In light of the foregoing, this court finds that the accusatory instrument is facially sufficient with respect to the charge of promoting gambling in the second degree.
The second count of the information charges the defendant with possession of gambling records in the second degree in violation of Penal Law § 225.15 (2) which provides: "A person is guilty of possession of gambling records in the second degree when, with knowledge of the contents or nature thereof, he possesses any writing, paper, instrument or article * * * [o]f a kind commonly used in the operation, promotion or playing of a lottery”.
The receipts which the defendant is alleged to possess represent purchases for Florida lottery tickets which are to be subsequently made by the purchasing agent in Florida. Notwithstanding the defendant’s contention to the contrary, the fact that the receipt only indicates that sometime in the future a purchase of a lottery ticket will be made for a New York customer does not, in and of itself, render the receipt outside of the purview of this statute. Records of unplayed lottery bets are presumptive evidence of a violation of this section (see, People v Kravitz, 287 NY 475, 477-478; see also, People v Torres, 21 NY2d 49, 52).
Accordingly, the factual allegations contained in the information are sufficient to establish the crime of possession of gambling records in the second degree.
The accusatory instrument is, however, facially insufficient to support the charge of possession of a gambling device. Penal Law § 225.30 (2) provides: "A person is guilty of possession of a gambling device when, with knowledge of the character thereof, he * * * possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of * * * [a]ny other gambling device, believing that the same is to be used in the advancement of unlawful gambling activity.”
The definition of a "gambling device” does not contemplate that the defendant’s lotto machine, which he uses to issue receipts for out-of-State lottery tickets, would be considered a gambling device. A gambling device is defined, pursuant to Penal Law § 225.00 (7), as follows: "[A]ny device, machine, paraphernalia or equipment which is used or usable in the playing phases of any gambling activity, whether such activity consists of gambling between persons or gambling by a person involving the playing of a machine. Notwithstanding the *354 foregoing, lottery tickets, policy slips and other items used in the playing phases of lottery and policy schemes are not gambling devices. ” (Emphasis added.)
The definition of a gambling device specifically excludes devices associated with the playing phases of a lottery. Therefore, the defendant’s lotto machine does not qualify as a gambling device within the purview of Penal Law § 225.30 (2). Further support for this conclusion can be derived from the fact that the computer itself is not designed for carrying on the actual gambling, and therefore it is not considered a device for gambling purposes (see, People v Engeman, 129 App Div 462, affd 195 NY 591; see also, Matter of Beamel Amusement Corp. v Police Dept., 54 Misc 2d 946). Since the lotto machine, which the defendant is alleged to possess, only issues receipts, this court cannot even deem the device to constitute an unauthorized lottery ticket vending machine (see, Tax Law § 1604 [a] [8]).
For the foregoing reasons, the charge of possession of a gambling device is dismissed for facial insufficiency and the remaining two charges are hereby retained.
BILL OF PARTICULARS, DISCOVERY AND EXCULPATORY EVIDENCE
Those branches of the defendant’s motion seeking to compel is granted to the extent of the information provided in the People’s response and the accusatory instrument.
The People are reminded of their continuing obligation under Brady v Maryland (373 US 83).
MOTION FOR CPL 240.43 DISCLOSURE
That branch of the defendant’s motion seeking disclosure pursuant to CPL 240.43 is referred to the trial court for resolution just prior to trial.