The People of the State of New York, Plaintiff, *v.* Charles Conti, Defendant.

Supreme Court, Chautauqua County, April 15, 1926.

Crimes — maintenance of premises for sale of intoxicating liquor in violation of National Prohibition Act does not constitute public nuisance in violation of Penal Law, § 1530 — indictment dismissed.

The maintenance of premises for the sale and possession of intoxicating liquor in violation of the National Prohibition Act is not a crime and offense against the State of New York and does not constitute the crime of maintaining a public nuisance within the meaning of section 1530 of the Penal Law and, therefore, the indictment must be dismissed and the defendant discharged.

Motion to dismiss or set aside indictment charging the maintenance of a public nuisance in violation of section 1530 of the Penal Law.

*Glenn W. Woodin* and *John S. Leonard, District Attorney,* for the ·People of the State of New York.

*Frank H. Mott* and *M. D. Lombardi,* for the defendant.

LYTLE, J. The defendant was indicted for the crime of maintaining a public nuisance in violation of section 1530 of the Penal Law of the State of New York.

The indictment alleges:

" The Grand Jury of the County of Chautauqua, by this indictment, accuses Charles Conti of the crime of maintaining a nuisance, in violation of Section 1530 of the Penal Law of the State of New York, committed as follows:

" That the defendant heretofore and on or about the 15th day of November, 1925, and at divers times prior thereto in the Town of Ellicott, Chautauqua County, New York, at certain premises located on the Jamestown-Bemus Point highway near the Jamestown city line, committed and maintained a public nuisance by there unlawfully committing acts which offended public decency and annoyed, injured and endangered the comfort, repose, health and safety of a considerable number of persons there, in that he kept and maintained said place where he encouraged, permitted and allowed vagrants, criminals, prostitutes, drunkards and other persons to frequent the aforesaid premises, and did possess, distribute and sell for profit, and give away, intoxicating liquors containing more than $\frac{1}{2}$ of 1 per cent. of alcohol, by volume, to the aforesaid persons, in violation of the laws of the United States of America, and where other indecent and disorderly acts were committed, whereby the decency, peace and comfort of the neighborhood were disturbed, contrary to the form of the statute in such case made and provided, and against the peace of the people of the State of New York, and their dignity."

The defendant demurred to the indictment, asking that the demurrer be granted and sustained, or that the indictment be dismissed, or that the defendant be granted permission to inspect the grand jury minutes for the purpose of making a motion to dismiss the indictment.

The court permitted an inspection of the grand jury minutes, from which it appears that during the evening of November 15, 1925, the sheriff and the under sheriff of Chautauqua county with two members of the New York State Police " made a raid upon the place just outside of the city of Jamestown, known as the Cascade Lunch " and operated by the defendant; that at the time of the raid there were eight or ten people present, and that there was " quite a lot of loud talking and there was some singing." Some bottles of ale or beer and whisky, containing more than one-half of one per cent of alcohol were found upon the premises. The grand jury minutes failed to show any other facts which might constitute a violation of section 1530 of the Penal Law, except

that on the evening of November 15, 1925, at the time of the raid, there were several persons in the lunch room, apparently drinking intoxicating liquors and the defendant possessed intoxicating liquors containing more than one-half of one per cent of alcohol in violation of the National Prohibition Act, commonly known as the Volstead Act (41 U. S. Stat. at Large, 307, chap. 85, tit. 2).

The defendant, after inspecting the grand jury minutes, made a motion to dismiss and set aside the indictment. Upon the argument of said motion the only question raised is whether the maintenance of premises in the State of New York for the sale and possession of intoxicating liquor constitutes a violation of section 1530 of the Penal Law of the State of New York, and thereby subjects the offender to the punishment prescribed for violation of said section of the Penal Law.

The indictment alleges, and the grand jury minutes tend to support the allegation, that the defendant maintained certain premises where he " did possess, distribute and sell for profit and give away intoxicating liquors containing more than $\frac{1}{2}$ of 1% of alcohol by volume　*　*　*　in violation of the Laws of the United States of America."

This court, however, has no jurisdiction of offenses and crimes against the United States, unless the same act constituting a crime against the United States has been defined as a crime and an offense against the State of New York, in which event this court would enforce the State law defining the crime and prescribing the punishment, and not the law of the United States.

Violation of the Federal law is a crime against the sovereignty of the United States and, as such, is punishable only in the United States courts.

The Judicial Code, section 256, specifically provides:

" Cases in which jurisdiction of United States courts shall be exclusive of the State courts.　*　*　*

" The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several States: First. Of all crimes and offenses cognizable under the authority of the United States.　*　*　*" (36 U. S. Stat. at Large, 1160, 1161, § 256, subd. 1.)

In *Tennessee* v. *Davis* (100 U. S. 257, 262) the court held that " There can be no criminal prosecution initiated in any State court for that which is merely an offense against the general government."

In *People* v. *Welch* (141 N. Y. 266, 275) the court states: " The States do not enforce the criminal laws of the United States ( *U. S.* v. *Lathrop*, 17 Johns. 4)," and (at p. 278) the court continued:

" Under sec. 711 [later sec. 256 of the Judicial Code], the States could not enforce the criminal statutes of the United States, as was attempted in substance under the law of Pennsylvania, involved in *Houston* v. *Moore* (5 Wheat. 7). Nor, under sec. 711, could a State make an act criminal and punishable in its courts, which in its nature was an offense only, because made so by a law of Congress."

In *U. S.* v. *Lathrop* (17 Johns. 4, 10) the court held: " The jurisdiction of the State courts is excluded in cases of crimes and offenses cognizable under the authority of the United States."

In *People* v. *Lynch* (11 Johns. 549) the defendants were indicted for treason. It being a crime against the United States, the indictment was dismissed as the offense was one against the United States, so that the State courts would not have jurisdiction of the crime.

In *Ex parte Bridges* (Fed. Cas. No. 1862), wherein petitioner was indicted for perjury committed in the course of an investigation conducted under the authority of acts of Congress, it was held that it was an offense against the public justice of the United States, and exclusively cognizable in the courts of the United States. The court said:

" The judiciary power of every government can look beyond its own municipal laws in civil cases, and can take cognizance of all subjects of litigation between parties within its territorial limits and jurisdiction, though the controversy relate to the laws of a foreign country. *But, as regards crime*, the rule is otherwise; for the courts of one State or Nation will not hold cognizance of, nor enforce the criminal laws of another. And as to crimes made so by legislative enactments, the government of the United States stands in the same relation to the government of this State as any foreign power.

" Mr. Justice Story, in giving the opinion of the Supreme Court, in *Martin* v. *Hunter*, 1 Wheat. [14 U. S.] 304, said:

" ' No part of the criminal jurisdiction of the United States can, consistently with the constitution, be delegated to State tribunals.' Thus it is manifest, that the State courts cannot hold criminal jurisdiction over offenses exclusively existing as offenses against the United States; for every criminal prosecution must charge the crime to have been committed against the sovereign whose courts sit in judgment upon the offender, and whose authority can pardon him.

" In *Commonwealth* v. *Tenney*, 97 Mass. 50, the Supreme Judicial Court of Massachusetts, held that the offense of embezzlement, by a person in the employment of a national bank, located in that State, of the property of individuals deposited in such bank, not

being punishable under any existing law of the United States, the State courts had jurisdiction thereof, under the State statutes. The court said:

" ' There is no view of the relative, or the concurrent powers of the two governments, which affects the decision of the present case; for all courts and jurists agree that State sovereignty remains unabridged for the punishment of all crimes committed within the limits of a State, except so far as they have been brought within the sphere of federal jurisdiction, by the penal laws of the United States.'

" The language of the court in that case [*Commonwealth* v. *Tenney*] admits neither of doubt nor comment. It indicates, in terms too significant to be misunderstood, that, had Congress declared the act a crime, the State tribunals would have been altogether without jurisdiction over the offender."

In *Mitchell* v. *Great Works Milling & Mfg. Co.* (Fed. Cas. No. 9662) Circuit Justice STORY said: " The states, in providing their own judicial tribunals, have a right to limit, control, and restrict their judicial functions, and jurisdiction, according to their own mere pleasure. They may refuse to allow suits to be brought there ' arising under the laws of the United States ' for many just reasons; first that Congress are bound to provide such tribunals for themselves; secondly, that State courts are not subject to the legislation of Congress as to their jurisdiction; thirdly, that it may most materially interfere with the convenience of their own courts, and the rights of their own citizens, and be attended with great expense to the State, as well as great delays in the administration of justice, to allow their courts to be crowded with suits, arising under the laws of the United States; and fourthly, as in the present case, that it would involve the State courts in almost endless examinations and discussions of the principles and bearings of the bankrupt law, confessedly a system novel in our jurisprudence, intricate in its details, and involving questions exceedingly complicated and difficult in its practical operation. Suppose, upon considerations of this sort, any State Legislature should prohibit its own courts from taking cognizance of any causes arising under the bankrupt act, no one could doubt, that it was a perfectly constitutional exercise of authority, and not justly to be complained of, as a want of comity or of justice. A due regard of a State to its own rights, and its duties to its own citizens, might require such a course, in order to prevent oppressive delays, and obstructions in the actual administration of home justice; and, at all events, might justify it in preferring such claims to those, belonging appropriately to the national jurisdiction."

The prosecution, however, contends that the act of maintaining premises for sale and possession of intoxicating liquors constitutes a crime against the State of New York, and constitutes a violation of section 1530 of the Penal Law of the State of New York.

The question presented has never been passed on by the courts of this State, so far as I am able to ascertain, but we have an *obiter dictum* in the case of *United States of America* v. *Sumner* (125 Misc. 658) wherein Mr. Justice THOMPSON in a proceeding by the United States to abate a legal nuisance, in denying the defendants' motion to vacate a temporary writ of injunction under the National Prohibition Act (§ 22), said: " The laws of the State of New York also provide adequate remedy for the investigation and criminal prosecution of places and persons found occupied in the business of selling intoxicating liquors in violation of the Volstead Act. Such a place is a public nuisance, and a person maintaining it is guilty of a misdemeanor under the provisions of our Penal Law. Courts may also direct the abatement of the nuisance with costs to be paid by the defendant. (Penal Law, § 1530; Code Crim. Proc. § 953; U. S. Crim. Code, § 326.)*

Crime has been defined, generally, as any act or omission which is forbidden by law, to which punishment is annexed, and which the State prosecutes in its own name. Our Legislature has defined crime as " an act or omission forbidden by law, and punishable upon conviction    *   *   *." (Penal Law, § 2.)

In section 22 of the Penal Law the Legislature has provided: " No act or omission begun after the beginning of the day on which this chapter takes effect as a law, shall be deemed criminal or punishable, except as prescribed or authorized by this chapter, or by some statute of this State not repealed by it.   *   *   *"

Under our Constitution and system of government, the Legislature has power to define what acts shall constitute a criminal offense, what penalties shall be inflicted upon the offenders, and generally, to enact all laws which the Legislature shall deem expedient for the protection of public and private rights and the prevention and punishment of public wrongs. (*Lawton* v. *Steele*, 119 N. Y. 226; affd., 152 U. S. 133.)

In *People* v. *Knapp* (206 N. Y. 373, 380) the court held: " According to the Penal Law no act or omission is a crime except as prescribed by statute. (Penal Law, § 22; Penal Code, § 2.) There is no longer any common law crime in this State.   *   *   * Formerly whenever a legal duty of a public nature was imposed,

---

* See 35 U. S. Stat. at Large, 1151, § 326; Barnes Federal Code, § 10029; U. S. Comp. Stat. § 10500.— [REP.

either by statute or common law a neglect of that duty was indictable, but this has not been the law, except where specially prescribed by statute, since the enactment of section 22 of the Penal Code."

In *People* v. *Arnstein* (78 Misc. 18; revd., on other grounds, 157 App. Div. 766) the court, in defining the word " crime," said (at p. 27): " When recourse is had to the general definition of a crime as contained in the Penal Code, and now in the Penal Law, it is found that the definition is composed of two elements, namely, first, that it shall be an act or omission forbidden by law, and, secondly, that it shall be punishable in some one of specified ways. Penal Code, § 2; Penal Law, § 2. Before, therefore, a given act can be pronounced to be a crime it must be established that it is forbidden by law and, moreover, if committed since the Penal Law went into effect, that it is so forbidden by some provision of either the Constitution of the State, the Penal Law itself or of some statute of this State not repealed by the Penal Law."

In *People* v. *Martin* (38 Misc. 67) the court said (at p. 70): " In the exercise of its powers the State prohibits the commission of certain acts within its boundaries, and, if committed, it declares them to be crimes. A crime is essentially local, and is the creature of the law which defines or prohibits it. It is an offense against the sovereignty, and can be taken notice of and punished only by the sovereignty offended. The indictment against the defendants is in the name of The People of the State of New York. They prosecute for a crime committed against their law, not for a crime committed against the law of a foreign State. Their law is entitled ' The Penal Code of the State of New York ' (Penal Code, § 1), and an act or omission forbidden by that law is declared to be a crime. Id. § 3."

Whether the act of maintaining premises for sale and possession of intoxicating liquors is a crime and offense against the People of the State of New York, involves a consideration of the Eighteenth Amendment to the United States Constitution, the so-called Volstead Act, New York State Enforcement Act (Mullen-Gage Act), repeal thereof, and section 1530 of the Penal Law of the State of New York.

The Eighteenth Amendment to the Constitution of the United States provides:

" 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

" 2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation.

" 3. This article shall be inoperative    *    *    *."

The effect of the Eighteenth Amendment was to give to Congress the same police power to stamp out the manufacture, sale and transportation of liquor that the States had before the amendment. This is true now both as to interstate and intrastate commerce. ( *United States* v. *Cohen*, 268 Fed. 420; *National Prohibition Cases [Rhode Island* v. *Palmer*], 253 U. S. 350; 40 Sup. Ct. 486; 64 L. ed. 946.)    Before the enactment of the Eighteenth Amendment, Congress had no police power to deal with the manufacture, sale or transportation of intoxicating liquor intrastate, but this amendment gave Congress police power to enforce prohibition by all reasonable laws and regulations.

The United States Supreme Court, in the case of *Rhode Island* v. *Palmer* (*supra*), in construing the Eighteenth Amendment to the United States Constitution held:

" 6. The first section of the amendment — the one embodying the prohibition — is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers and individuals within those limits, and of its own force invalidates every legislative act — whether by Congress, by a State Legislature, or by a territorial assembly — which authorizes or sanctions what the section prohibits.

" 7. The second section of the amendment — the one declaring ' The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation ' — does not enable Congress or the several States to defeat or thwart the prohibition, but only to enforce it by appropriate means.

" 8. The words ' concurrent power ' in that section do not mean joint power, or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several States or any of them; nor do they mean that the power to enforce is divided between Congress and the several States along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs."

It is intimated in the concurring opinion of the chief justice that Congress had the duty of enacting legislation which should be operative throughout the country, but that each State could act as it saw fit within its jurisdiction, as long as such acts contemplated enforcement of the amendment and were consistent with the Federal statute.    In speaking of the 2d section of the Eighteenth Amendment to the United States Constitution, Chief Justice WHITE said: " It was sought by the second section to unite

national and State administrative agencies in giving effect to the amendment and the legislation of Congress enacted to make it completely operative." The intent of the Eighteenth Amendment to the United States Constitution is obvious. There can be no confusion or difference of opinion as to what Congress proposed to the States and what the States understood when they ratified the proposal as a part of the Constitution of the United States.

The States, however, are not required to have a prohibitory law, or any law on the subject of intoxicating liquor.

In *Commonwealth* v. *Nickerson* (236 Mass. **281**) defendant was charged with having sold intoxicating liquor without a license and contrary to law, at Boston. The court, in speaking of the word " concurrent," found in section 2 of the constitutional amendment, says: " We are of opinion that the word ' concurrent ' in this connection means a power continuously existing for efficacious ends to be exerted in support of the main object of the amendment and making contribution to the same general aim according to the needs of the State even though Congress also has exerted the power reposed in it by the amendment by enacting enforcing legislation operative throughout the extent of its territory. *Legislation by the States need not be identical with that of Congress.* It cannot authorize. that which is forbidden by Congress. *But the States need not denounce every act committed within their boundaries which is included within the inhibition of the Volstead Act, nor provide the same penalties therefor.* It is conceivable also that a State may forbid under penalty acts not prohibited by the act of Congress. The concurrent power of the States may differ in means adopted, provided it is directed to the enforcement of the amendment. Legislation by the several States appropriately designed to enforce the absolute prohibition declared by the Eighteenth Amendment is not void nor inoperative simply because Congress in performance of the duty cast upon it by that amendment has defined and prohibited beverages and has established regulations and penalties concerning them. State statutes, rationally adapted to putting into execution the inexorable mandate against the sale of intoxicating liquors for beverage contained in § 1 of the amendment by different definitions, regulations and penalties from those contained in the Volstead Act and not in conflict with the terms of the Volstead Act but in harmony therewith, are valid."

In *State* v. *Gauthier* (121 Maine, 522) the court said: " But uniformity throughout the nation is not contemplated except in prosecutions under the Federal law. All authorities hold that the State may establish its own procedure and prescribe its own penalties. Moreover, it is clear that no State is required to have

a prohibitory law, or any law on the subject of intoxicating liquor. If it enacts an inappropriate law the amendment instantly invalidates it unless it contain a separable appropriate provision which may survive. But the State may leave the liquor problem to the care of Federal courts and officers. There is no requirement of uniformity in State and National enforcement."

And the court further said: " The powers of Congress and of the State Legislatures are under the Eighteenth Amendment independent and while both are subject to the organic law, and while acts of Congress have nationwide territorial application, neither is within a State paramount. * * *

" The amendment in providing for concurrent power to legislate is based upon the principle that the same conduct may be an offense against the State and also against the nation. The same act may offend against the sovereignty of the State and that of the United States. Prior to the adoption of the Eighteenth Amendment the sale or keeping for sale of intoxicating liquor within a State could only be an offense against the State sovereignty. Under the police power the State could forbid such acts but Congress had no power whatever in the premises. Since the passage of the Eighteenth Amendment the sale and keeping for sale of intoxicating liquor for beverage purposes in a State offends against the sovereignty of the nation as well as that of the State. The new power vested in Congress applies to the whole nation and all places subject to its dominion, but is otherwise parallel with and not superior to the State police power.

" The phrase ' concurrent power ' is new in the Constitution, but has been frequently used in reference to relations somewhat analogous to that now newly created. Take the case of a robbery of the mails on a State highway. Here one act violates both the State and the national sovereignty. Here while the Constitution has not specifically and in terms so provided, Congress and the State Legislature have concurrent power.' Congress has power to define the crime against the nation and to impose penalties to be enforced by the Federal courts. The State Legislature has power to define the crime (the same act) against the State and to impose penalties to be enforced by the State courts. The definitions contained in the act of Congress do not enter into the State statutes."

In *Allen* v. *Commonwealth* (129 Va. 723) it was held that the " same conduct may constitute an offense against the United States and also a distinct offense against the State and the accused may be punished for both crimes, each sovereignty punishing him for the crime committed against it."

In the case of *State* v. *Barksdale* (181 N. C. 621) it was held:

" Though an exception may be in violation of the Federal law on the subject, a defendant may not be indicted and convicted in the State court for violation of a State statute, which contains an exception exculpating him until our own Legislature has acted in the matter and passed a statute that condemns him."

And in the case of *Matter of Volpi* (53 Cal. App. 229; 199 Pac. 1090) the court said: " Should the Federal government and a State differently define the term ' intoxicating liquors,' it appears that both enactments would be equally binding upon the People of the State, the one enforceable exclusively through the Federal courts, the other through the courts of the State."

In the case of *People* v. *Wicka* (117 Misc. 364, 368) the court said that the State " did not surrender any of its control under the [eighteenth] amendment, except the power to pass legislation hostile to it."

To the same effect, *State* v. *Ceriani* (96 Conn. 130).

In *Matter of Guerra* (94 Vt. 1) the relator was convicted in the City Court of Montpelier on a complaint charging that at a time and place named, he did keep and possess for sale intoxicating liquor with intent to sell, and furnished the same without authority, contrary to the form of the statute. The relator objected on the ground that the court was without jurisdiction, for the statute upon which the complaint was founded was supplemented or abrogated by the passage of an act of Congress regulating the traffic in intoxicating liquors, which act was and is the supreme law of the land, and that the courts of the United States had the sole jurisdiction of offenses thereunder. The court said: " It is not claimed, nor could it well be, that the court was acting under authority of the Federal statute. Exclusive jurisdiction of all crimes and offenses cognizable under authority of the United States, unless otherwise provided, is vested in the courts thereof. U. S. Comp. Stat. § 1233; *Houston* v. *Moore*, 5 Wheat. 1, 5 L. Ed. 19. This general provision is left undisturbed by the War Prohibition Act."

The conviction was affirmed on the ground that the State statute forbidding sale of intoxicating liquor without license was not superseded or nullified by the Federal War Prohibition Act, in so far as it did not obstruct and embarrass the execution of an act of Congress, but prohibited the same act as a war measure.

When the Eighteenth Amendment was discussed in Congress, the chairman of the house judiciary committee stated that as the amendment passed the Senate it provided that Congress should have the power to enforce this article by appropriate legislation, but most of the members of the judiciary committee felt that

there ought to be a reservation to the States also of power to enforce their prohibition laws and, therefore, the House committee amended the resolution by providing that Congress and the several States shall have concurrent power to enforce this article. It was feared that the claim might be made that the State had turned over to the Federal Congress the exclusive right to enforce the law.

The chairman spoke of the crime of counterfeiting by analogy as being a national offense which the States also had a right to prosecute where the same act was also declared a crime by the State. The chairman of the judiciary committee later stated that if the State passed a law forbidding a beverage containing more than three per cent of alcohol, then one who sold such beverage would be exempt from prosecution by the State authorities, but would be liable to indictment under the Federal act. On the other hand, some States may pass a law so drastic that they will not permit any beverage to be sold containing alcohol, and in such case the Volstead Act would not give such person immunity from prosecution under State law. (*Jones* v. *Hicks*, 150 Ga. 657; 104 S. E. 771; 11 A. L. R. 1315.)

The Volstead Act (41 U. S. Stat. at Large, 305, Comp. Stat. chap. 85, § 10, 138¼a) was enacted by Congress under the authority of the Eighteenth Amendment  Section 21 of said act provides: " Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both. If a person has knowledge or reason to believe that his room, house, building, boat, vehicle, structure, or place is occupied or used for the manufacture or sale of liquor contrary to the provision of this title, and suffers the same to be so occupied or used, such room, house, building, boat, vehicle, structure, or place shall be subject to a lien for and may be sold to pay all fines and costs assessed against the person guilty of such nuisance for such violation, and any such lien may be enforced by action in any court having jurisdiction."

Sections 22 and 24 provide for the abatement of common nuisances as declared under section 21 and for the punishment of violators of the injunction orders. It was the purpose of Congress in enacting sections 21, 22 and 24 to supply a more prompt, effective and efficient means of abating nuisances than the institution of criminal actions. (*Lewinsohn* v. *U. S.*, 278 Fed. 421.) Congress

also had the right in the exercise of specific power granted by the Eighteenth Amendment to declare a place kept and maintained for the illegal manufacture and sale of intoxicating liquors to be a nuisance. (*Remus* v. *U. S.*, 291 Fed. 513.)

For the abatement of nuisances defined under section 21 of the Volstead Act the State courts have jurisdiction to try cases brought by the district attorney in the name of the United States. (*Carse* v. *Marsh*, 189 Cal. 743; *Matter of Brambini*, 192 Cal. 19; 218 Pac. 569; *United States* v. *Stevens*, 103 Conn. 7; 130 Atl. 249; *United States of America* v. *Sumner*, 125 Misc. 658; 216 App. Div. 782.)

The State of New York, after the adoption of the Eighteenth Amendment to the Constitution of the United States, enacted a State Prohibition Act, known as the Mullen-Gage Law (Laws of 1921, chap. 155).* This act, among other things, declared that places where intoxicating liquor was sold or kept were public nuisances and provided punishment for any person maintaining such nuisance. Section 1214-g of the Penal Law (added by Laws of 1921, chap. 155) provided:

" § 1214-g. Maintenance of place where violations are committed. No person shall maintain any room, house, building, boat, vehicle, structure or place where intoxicating liquor is manufactured, sold, given away, kept or bartered in violation of this article, and all intoxicating liquor and property kept and used in maintaining the same is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than one thousand dollars or be imprisoned for not more than one year or both," etc.

Later, however, the Legislature of the State of New York repealed the Mullen-Gage Act (Laws of 1923, chap. 871). Since the repeal of said act there is no State Prohibition Enforcement Act and there is no specific statutory declaration to the effect that premises maintained for the sale and possession of intoxicating liquors are public nuisances. There is no State statute declaring the manufacture, sale or transportation of intoxicating liquors a crime against the State of New York.

Prior to the enactment of the Mullen-Gage Act, trafficking in intoxicating liquors was recognized by our Legislature as a lawful business, subject, however, to legislative control and regulation in the exercise of police powers, and for the purpose of control and regulation of liquor traffic the Legislature enacted the Liquor Tax Law, which, however, was expressly repealed by the enactment of

* See, also, State Prohibition Enforcement Act, known as the Mullen-Gage Law (Laws of 1921, chap. 156); repealed by Laws of 1923, chap. 871.— [REP.

the so-called Mullen-Gage Law (Laws of 1921, chap. 155), a State Enforcement Act. This State Enforcement Act was repealed after our Legislature decided that the enforcement of the National Prohibition Act should be left to the Federal government. The repeal, however, has no effect upon the validity of enforcement of the Volstead Act within this State. But this court has no jurisdiction over acts defined as crime under the Volstead Act, unless the same act has been defined a crime by the Legislature of the State of New York.

The prosecution, however, contends that premises where intoxicating liquor is sold or kept are a public nuisance within the meaning of section 1530 of the Penal Law, which reads as follows:

" § 1530. Public nuisance defined. A ' public nuisance ' is a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission:

" 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or,

" 2. Offends public decency; or,

" 3. Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, a lake, or a navigable river, bay stream, canal or basin, or a stream, creek or other body of water which has been dredged or cleared at public expense, or a public park, square, street or highway; or,

" 4. In any way renders a considerable number of persons insecure in life, or the use of property."

Public nuisance as defined by statute is a mere formulation of common-law definitions. (*People* v. *Borden's Condensed Milk Co.*, 165 App. Div. 711; affd., 216 N. Y. 658.)

The term " nuisance " is derived from the French word " nuire," which means to injure, hurt or harm. According to the definition given by Blackstone (3 Black. Comm. 216), which has met with general approval, a nuisance is " anything done to the hurt or annoyance of the lands, tenements or hereditaments of another." Public nuisances are founded upon wrongs that arise from the unreasonable, unwarrantable or unlawful use of property or from improper, indecent or unlawful conduct working an obstruction or injury to the public and producing material annoyance, inconvenience and discomfort. (*Bohan* v. *Port Jervis Gas Light Co.*, 122 N. Y. 18.)

In *Melker* v. *City of New York* (190 N. Y. 481) the court in defining the word " nuisance " said: " The primary meaning of the word, suggested by its derivation, is that which injures, or, in the quaint phrase of ancient times, ' that which worketh hurt.' The injury

may be to person or property, to health, comfort, safety or morality. *It may be a crime."*

Nuisances have been classified as:

1. Those which in their nature are nuisances *per se,* or are so denounced by the common law or by statute.

2. Those which in their nature are not nuisances, but may become so by reason of their locality, surroundings or the manner in which they may be conducted, managed, etc.

3. Those which in their nature may be nuisances, but as to which there may be an honest difference of opinion in impartial minds.

With respect to the scope of their injurious effect, nuisances have been classified as public, private and mixed. (*Kelley* v. *Mayor,* 89 Hun, 246.) They are public when they violate public rights and produce a common injury; where they injure or annoy that portion of the public which necessarily comes in contact with them. The difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing itself. It is public because of the danger to the public; it is private only because the individual, as distinguished from the public, has been or may be injured. A place where intoxicating liquors were sold was not a nuisance at common law, as it was, before statute 5 and 6 Elizabeth, 6, lawful in England for any one to keep an alehouse without a license, it being regarded as a legitimate means of livelihood which any one was free to follow. Alehouses were nuisances when disorderly and held to be nuisances on account of the disorderly conduct. (*Commonwealth* v. *McDonough,* 13 Allen, 581.)

In *Sopher* v. *State* (169 Ind. 177) the court held that neither the sale of intoxicating liquors nor the keeping and maintaining in an orderly manner of houses wherein such liquors were sold to be used as a beverage constituted a public offense or a public nuisance at law, and further observed that for hundreds of years dealers have indulged in the sale of intoxicants as a beverage without a single instance in which it was held illegal at common law. When restrictive legislation commenced, it necessarily assumed that such sales were legal until made illegal by the statute. Every statute on the subject from that day to this has proceeded on the same assumption and has been in itself a recognition of the legality of the business until restricted by positive legislation. More explicitly still, the lawfulness of the sale of intoxicants, except as restrained by positive law, has been directly adjudicated by the Court of Appeals in New York State in the case of *Wynehamer* v. *People* (13 N. Y. 378).

The sovereign power of government has been repeatedly held to belong to the law-making bodies of our States, except as they are restricted by the Federal and State Constitutions. In *People* v. *N. Y. Edison Co.* (159 App. Div. 786) the court observed: " It is entirely competent for the State Legislatures, and for the Congress of the United States, legislating for the Territories, to add to the common-law classification of nuisances, and to declare things to be public nuisances which were not such in fact as the term nuisance had been theretofore understood and applied by the courts," and in *Hefferon* v. *N. Y. Taxicab Co.* (146 App. Div. 311, 313) the court said: " While every public nuisance was a crime at common law and is so under our statute, yet not every crime is a public nuisance. The terms are not at all convertible."

The Legislature and judicial departments of our State government under the Constitution are separable and distinct from each other. Each is forbidden by our fundamental law to exercise the function of the other. Therefore, the courts cannot make laws or regulations pertaining to the health, morals or safety of the public. The making of these laws, the same as others, is a question to be dealt with by the legislative department and not by the courts. Neither is the court authorized to adjudge or declare a thing to be a public or common nuisance which is not regarded or made such by law. In *Otis* v. *Parker* (187 U. S. 606) Mr. Justice HOLMES, speaking for the court, very appropriately says: " While the courts must exercise a judgment of their own, it by no means is true that every law is void which may seem to the judges who pass upon it excessive, unsuited to its ostensible end, or based upon conceptions of morality with which they disagree. Considerable latitude must be allowed for differences of view as well as for possible peculiar conditions which this court can know but imperfectly, if at all. Otherwise a constitution, instead of embodying only relatively fundamental rules of right, as generally understood by all English-speaking communities, would become the partisan of a particular set of ethical or economical opinions." " That people greatly differ in their opinions in respect to the use of liquors, spirituous, vinous or malt, must be conceded. Some advocate absolute abstinence, while others uphold the moderate or temperate use of such liquors and seek to justify their contention by approving of the advice of Paul to Timothy: ' Drink no longer water, but use a little wine for thy stomach's sake, and thine often infirmities.' 1 Timothy, chap. 5, verse 23." (*Sopher* v. *State, supra.*)

The State of New York, at the time of the enactment of the present section 1530 of the Penal Law, attempted to regulate and control liquor traffic, recognizing the same as lawful business. In defining

public nuisances, the Legislature certainly did not contemplate or intend to denounce the existence of premises where liquor is sold, for the Legislature impliedly recognized their maintenance under the Liquor Tax Law. The Legislature, however, did denounce by said section the maintenance of premises for the sale of intoxicating liquor if the premises were disorderly and affected a considerable number of persons by annoying them, etc., or offending public decency. Without these additional elements, the mere maintenance of premises for sale and possession of intoxicating liquor did not constitute a public nuisance or a crime under section 1530 of the Penal Law.

Although the Federal statute, the National Prohibition Act, known as the Volstead Act, declares a place where intoxicating liquor is sold or kept a common nuisance, such declaration or definition does not enter into our statute, section 1530 of the Penal Law, passed long prior to the Volstead Act. (*State* v. *Gauthier, supra.*)

The court's attention has been called by the prosecution to a portion of the opinion of the United States Supreme Court in *Second Employers' Liability Cases* (223 U. S. 1) wherein the court said that the national law is the supreme law of the land, and neither the State, its citizens, nor its courts, can override it.

The court was considering suits of a civil nature, and held that the enforcement of rights under the Employers' Liability Act cannot be regarded as impliedly restricted to Federal courts, in view of the concurrent jurisdiction provision of the Judiciary Act and the amendment to the original Employers' Liability Act, which instead of granting jurisdiction to the State courts presupposed that they already possessed it.

The same reasoning as to the jurisdiction of State and Federal courts is certainly not applicable to this case, in view of the specific provision in the Judicial Code declaring that the Federal courts shall have exclusive jurisdiction over crimes against the United States.

Before the People of the State of New York, represented by the district attorneys in various counties, can prosecute persons within their counties for acts constituting violations of the Volstead Act, the State Legislature must denounce the same acts and declare the same to be crimes against the State of New York and provide punishment therefor. Public officials of the State cannot properly, consistently, reasonably and adequately aid the Federal government in its efforts for prohibition enforcement by prosecuting under State laws and in State courts, when there are no State laws providing for prohibition enforcement. This court may have jurisdiction over the person violating the Volstead Act, but it has no juris-

diction over the subject-matter, namely, the offense. The People of the State of New York cannot take active part in prohibition enforcement until the Legislature enacts a State Prohibition Enforcement Act defining intoxicating liquor, declaring certain acts to be offenses against the State and providing punishment for violations of said act. This court, in view of the attitude of the Legislature representing the People of the State of New York in not providing a State Enforcement Act, would not be justified, even if it were possible, to extend the application of section 1530 of the Penal Law beyond the plain words thereof. " In giving a construction * * * we must bear in mind the statute makes penal the doing of something not before forbidden by law. While the language employed should be given a reasonable construction for the purpose of carrying into effect the purpose of the Legislature in framing the statute, it cannot be enlarged so as to make penal what is not plainly written in the statute itself. Words employed in such a statute should be given that ordinary and usual meaning and should not be so construed as to make out a crime by implication." (*People* v. *Cohen,* 94 Misc. 355.)

By reason of the fact that the maintenance of premises for the purpose of sale and possession of intoxicating liquors in violation of the Volstead Act is not a crime and offense against the State of New York and does not constitute the crime of maintaining a public nuisance within the meaning of section 1530 of the Penal Law of the State of New York, the indictment must be dismissed and the defendant discharged.

An order to that effect may be entered accordingly.